# IN THE UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTINE DEETHS,<br><br>         Plaintiff,<br><br>    vs.<br><br>LUCILE SLATER PACKARD<br>CHILDREN'S HOSPITAL AT<br>STANFORD, et al.,<br><br>         Defendants.<br>_____/ | CASE NO. CV F 12-2096 LJO JLT<br><br>**ORDER ON DEFENDANT THOMAS'**<br>**F.R.Civ.P. 12 MOTION TO DISMISS**<br>(Doc. 37.) |

**PRELIMINARY STATEMENT TO PARTIES AND COUNSEL**

Judges in the Eastern District of California carry the heaviest caseload in the nation, and this Court is unable to devote inordinate time and resources to individual cases and matters. This Court cannot address all arguments, evidence and matters raised by parties and addresses only the arguments, evidence and matters necessary to reach the decision in this order given the shortage of district judges and staff. The parties and counsel are encouraged to contact United States Senators Diane Feinstein and Barbara Boxer to address this Court's inability to accommodate the parties and this action. The parties are required to consider, or reconsider, consent to a U.S. Magistrate Judge to conduct all further proceedings in that the Magistrate Judges' availability is far more realistic and accommodating to parties than that of U.S. District Judge Lawrence J. O'Neill who must prioritize criminal and older civil cases.

Civil trials set before Judge O'Neill trail until he becomes available and are subject to suspension

mid-trial to accommodate criminal matters. Civil trials are no longer reset to a later date if Judge O'Neill is unavailable on the original date set for trial. If a trial trails, it may proceed with little advance notice, and the parties and counsel may be expected to proceed to trial with less than 24 hours notice. Moreover, this Court's Fresno Division randomly and without advance notice reassigns civil actions to U.S. District Judges throughout the nation to serve as visiting judges. This action is under consideration for such reassignment. Case management difficulties, including trial setting and interruption, are avoided with the parties' consent to conduct of further proceedings by a U.S. Magistrate Judge.

## INTRODUCTION

Defendant Anthony J. Thomas, M.D. ("Dr. Thomas") seeks to dismiss plaintiff Christine Deeths, M.D.'s ("Dr. Deeths'"), 42 U.S.C. § 1983 ("section 1983") claims arising from events culminating in juvenile dependency proceedings and removal of Dr. Deeths' adopted children. This Court considered Dr. Thomas' F.R.Civ.P. 12(b)(6) motion to dismiss on the record without a hearing. *See* Local Rule 230(g). For the reasons discussed below, this Court DENIES dismissal of Dr. Deeths' claims against Dr. Thomas.

## BACKGROUND[1]

### Summary

Dr. Deeths is a family physician and adoptive mother of RD and TD, who were ages four and six respectively when removed from Dr. Deeths' custody. Dr. Thomas practices medicine and resides in Kern County. The FAC alleges that Dr. Thomas and other defendant physicians made misrepresentations to Kern County Child Protective Services ("CPS") to result in fabricated child abuse charges against Dr. Deeths and the removal of RD and TD from Dr. Deeths' custody. The FAC alleges section 1983 denial of family association claims against Dr. Thomas, who challenges the claims as barred by collateral estoppel and invalid in that he is not a state actor. Dr. Deeths responds that the FAC adequately alleges that Dr. Thomas collaborated with CPS social workers to unlawfully seize Dr. Deeths' children to render his "liability coextensive with that of Kern County." Dr. Deeths further contends that collateral estoppel does not apply to underlying juvenile dependency proceedings given

---

[1] The factual recitation summarizes the pertinent allegations of Dr. Deeths' Amended Complaint for Damages ("FAC").

2

that allegations of wrongdoing arise from Dr. Thomas' "efforts to deceive the court."

**RD's Medical Treatment**

In May 2006, Dr. Deeths adopted RD, who at birth tested positive for methamphetamine and marijuana intoxication. Based on prior adoptive arrangements, Dr. Deeths was able to take custody of RD when she was 10 hours old. RD has required "specialized medical attention and care," and starting in March 2007, has been treated for pulmonary symptoms among others. RD's treatment reflected that she possibly suffered from cystic fibrosis. RD had multiple hospitalizations and treatment at several facilities. By late November 2010, RD was diagnosed with failure to thrive, cystic fibrosis and constipation.

**Altercation With Dr. Thomas**

On January 1, 2011, RD presented to the emergency room at Bakersfield Memorial Hospital ("BMH"). Dr. Thomas, the admitting doctor, mistook RD for a patient whom both Dr. Thomas and Dr. Deeths has treated for cystic fibrosis in 2010. Dr. Thomas asked Dr. Deeths about her husband although Dr. Deeths is not married and they "argued about his misperception. The argument escalated into a very contentious situation. Dr. Thomas appeared agitated and extremely angry" at Dr. Deeths. Shortly after RD's admission, BMH medical professionals relayed false information to defendant Christopher Harris, M.D. ("Dr. Harris"), of Cedars-Sinai Medical Center ("Cedars-Sinai") that RD "had never been diagnosed with cystic fibrosis" and that Dr. Deeths "was possibly subjecting RD to unnecessary medical treatment."

**RD's Transfer To Stanford**

After a two-week stay at BMH, BMH doctors told Dr. Deeths that RD would be transferred to Lucile Salter Packard Children's Hospital at Stanford ("Stanford"). Dr. Thomas falsely advised Dr. Harris and defendant John Stirling, Jr., M.D. ("Dr. Stirling"), at Stanford that Dr. Deeths suffered from Munchausen's Syndrome by Proxy ("MSP"), "a disorder where a parent purportedly induces real or apparent symptoms of a disease in a child." Dr. Thomas did not inform Dr. Deeths that "the main purpose" to transfer RD to Stanford was for Dr. Stirling, a so called MSP "expert" to investigate Dr. Deeths. The BMH discharge summary misrepresented that Dr. Deeths repeatedly precluded nurses to "adjust O2 settings," and "take vitals at appropriate times." However, nursing and pediatrician notes

fail to indicate that Dr. Deeths impaired oxygen management or "unilaterally and secretly altered oxygen levels."

After RD was admitted to Stanford on January 14, 2011, Dr. Stirling informed Dr. Deeths that BMH "had filed a child abuse report against her, and that Kern County CPS had become involved." On January 20, 2012, Dr. Stirling called a meeting of Stanford's Suspected Child Abuse and Neglect ("SCAN") team and other medical staff "to build a coalition of medical professionals willing to go along with Dr. Stirling's plan to falsely accuse" Dr. Deeths of suffering from MSP. A Stanford social worker, "presumably at Dr. Stirling's direction, secretly filed a suspected child abuse report with Kern County CPS." RD was discharged from Stanford on January 23, 2011.

### Dr. Thomas' Misrepresentations

On February 24, 2011, a "team decision meeting" was conducted by telephone among Drs. Thomas, Harris and Stirling and others. Dr. Thomas, "still angry" with Dr. Deeths misrepresented that:

1. No medical records supported Dr. Deeths' statement that RD suffered from failure to thrive during her first two years:
2. RD had numerous negative cystic fibrosis tests;
3. Dr. Deeths restricted nurses to treat RD;
4. Dr. Thomas had observed Dr. Deeths use a compression vest "for punitive purposes";
5. RD never had a failure to thrive; and
6. RD had never been intubated.

Dr. Thomas made the misrepresentations to induce CPS to seek to remove RD and TD from Dr. Deeths. The meeting participants agreed that RD and TD should be removed from Dr. Deeths.

### Juvenile Dependency Proceedings

On February 25, 2011, a social worker and two Bakersfield Police Department detectives seized RD and TD from Dr. Deeths' home without a warrant. On March 2, 2011, juvenile dependency petitions were filed for RD and TD to allege RD and TD required protection as juvenile court dependents under California Welfare and Institutions Code section 300 ("section 300"). After 80 days of separation from RD and TD, Kern County offered Dr. Deeths to plea no contest to an amended petition under section 300(b) (failure to adequately protect child, including matters related to medical care) in exchange for

4

increased visitation from two hours per week to "liberal." Dr. Deeths accepted a stipulation to the effect that RD and TD "were at risk due to Plaintiff having some kind of undefined anxiety disorder, and that Plaintiff had misrepresented RD's symptoms such that RD endured unnecessary medical treatment."

In her opposition papers, Dr. Deeths explains that she filed a petition under California Welfare and Institutions Code section 388 ("section 388")[2] to dismiss the juvenile dependency petitions. The California Court of Appeal, Fifth District, reversed the trial court's denial of her section 388 petition to result in dismissal of the juvenile proceedings and setting aside her nolo contendere plea.

### **Dr. Deeths' Claims**

The FAC alleges that Dr. Thomas along with Drs. Harris and Stirling:

1. Conspired with others to falsify the BMH medical history "to support their malevolent plan to paint [Dr. Deeths] as someone suffering from MSP, and ultimately to make a false referral to Kern County CPS";

2. Worked "regularly with CPS and Social Services agents who remove children from the care of their parents and from their family homes" and "had reason to know of the widespread and regularly established customs, practices, and usages of CPS and Kern County social workers" described in the FAC; and

3. Knew that action taken by Kern County employees "were likely to occur as a natural and foreseeable consequence of these doctors' acts of malfeasance."

Count 1 of the FAC's (first) section 1983 familial association claim alleges that Drs. Thomas, Harris and Stirling:

1. Acted "under color of state law when they acted, or knew and agreed and thereby conspired, to unlawfully remove, detain, question, threaten, examine, investigate, and/or search RD and TD" and "did so without proper justification or authority, and without probable cause, exigency, or court order";

2. Conspired "with the Kern County CPS and its social workers to violate" Dr. Deeths' civil

---

[2] Section 388(a)(1) provides: "Any parent . . . may, upon grounds of change of circumstance or new evidence, petition the court in the same action in which the child was found to be a dependent child of the juvenile court . . . for a hearing to change, modify, or set aside any order of court previously made or to terminate the jurisdiction of the court."

5

rights by "removing, detaining and continuing to detain RD and TD from the care, custody, and control" of Dr. Deeths "without exigent circumstances, and without providing adequate notice or opportunity to be heard"; and

3. Collaborated with "Kern County CPS and its social workers to ensure the warrantless seizure of RD and TD, and their removal" from Dr. Deeths' care in the absence of evidence that Dr. Deeths placed RD in danger.

Count 2 of the FAC's (first) section 1983 familial association claim alleges that Drs. Thomas, Harris and Stirling, "acting under color of sate law," conspired to violate Dr. Deeths' constitutional rights by "presenting false allegations, false or coerced testimony, fabricated evidence, and/or suppressed exculpatory evidence, before the Juvenile Court."

## DISCUSSION

### F.R.Civ.P. 12(b)(6) Motion To Dismiss Standards

Dr. Thomas seeks to dismiss the section 1983 familial association claims against him in that he is not a state actor subject to section 1983 liability and the claims against him are collaterally barred by the juvenile dependency proceedings.

A F.R.Civ.P. 12(b)(6) dismissal is proper where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balisteri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990); *Graehling v. Village of Lombard, Ill.*, 58 F.3d 295, 297 (7th Cir. 1995). A F.R.Civ.P. 12(b)(6) motion "tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).

In addressing dismissal, a court must: (1) construe the complaint in the light most favorable to the plaintiff; (2) accept all well-pleaded factual allegations as true; and (3) determine whether plaintiff can prove any set of facts to support a claim that would merit relief. *Cahill v. Liberty Mut. Ins. Co.,* 80 F.3d 336, 337-338 (9th Cir. 1996). Nonetheless, a court is not required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Sciences Securities Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (citation omitted). A court "need not assume the truth of legal conclusions cast in the form of factual allegations," *U.S. ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643, n. 2 (9th Cir.1986), and must not "assume that the [plaintiff] can prove facts

6

that it has not alleged or that the defendants have violated . . . laws in ways that have not been alleged." *Associated General Contractors of California, Inc. v. California State Council of Carpenters*, 459 U.S. 519, 526, 103 S.Ct. 897 (1983). A court need not permit an attempt to amend if "it is clear that the complaint could not be saved by an amendment." *Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 946 (9th Cir. 2005).

A plaintiff is obliged "to provide the 'grounds' of his 'entitlement to relief' [which] requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555, 127 S. Ct. 1955, 1964-65 (2007) (internal citations omitted). Moreover, a court "will dismiss any claim that, even when construed in the light most favorable to plaintiff, fails to plead sufficiently all required elements of a cause of action." *Student Loan Marketing Ass'n v. Hanes*, 181 F.R.D. 629, 634 (S.D. Cal. 1998). In practice, a complaint "must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Twombly*, 550 U.S. at 562, 127 S.Ct. at 1969 (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)).

In *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949 (2009), the U.S. Supreme Court explained:

> . . . a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." . . . A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. . . . The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. (Citations omitted.)

After discussing *Iqbal*, the Ninth Circuit summarized: "In sum, for a complaint to survive [dismissal], the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Service*, 572 F.3d 962, 989 (9th Cir. 2009) (quoting *Iqbal*, 556 U.S. 662, 129 S.Ct. at 1949).

The U.S. Supreme Court applies a "two-prong approach" to address dismissal:

> First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. . . . Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. . . . Determining whether a complaint states a plausible claim for relief will . . . be a

7

> context-specific task that requires the reviewing court to draw on its judicial experience and common sense. . . . But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not "show[n]"-"that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2).
>
> In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Iqbal*, 556 U.S. at 678-679, 129 S.Ct. at 1949-1950.

With these standards in mind, this Court turns to Dr. Thomas' challenges to the FAC's claims against him.

## Section 1983 Requirements

"Section 1983 imposes two essential proof requirements upon a claimant: (1) that a person acting under color of state law committed the conduct at issue, and (2) that the conduct deprived the claimant of some right, privilege, or immunity protected by the Constitution or laws of the United States." *Leer v. Murphy*, 844 F.2d 628, 632-633 (9th Cir. 1988).

"Section 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271, 114 S.Ct. 807, 811 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144, n. 3, 99 S.Ct. 2689, 2694, n. 3 (1979)). Section 1983 and other federal civil rights statutes address liability "in favor of persons who are deprived of 'rights, privileges, or immunities secured' to them by the Constitution." *Carey v. Piphus*, 435 U.S. 247, 253, 98 S.Ct. 1042 (1978) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 417, 96 S.Ct. 984, 996 (1976)). "The first inquiry in any § 1983 suit, therefore, is whether the plaintiff has been deprived of a right 'secured by the Constitution and laws.'" *Baker,* 443 U.S. at 140, 99 S.Ct. 2689 (1979). Stated differently, the first step in a section 1983 claim is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271, 114 S.Ct. 807, 813 (1994). "Section 1983 imposes liability for violations of rights protected by the Constitution, not for violations of duties of care arising out of tort law." *Baker*, 443 U.S. at 146, 99 S.Ct. 2689.

"Under Rule 8(a), a complaint must do more than name laws that may have been violated by the defendant; it must also allege facts regarding what conduct violated those laws." *Anderson v. U.S. Dept.*

8

*of Housing and Urban Development*, 554 F.3d 525, 528 (5th Cir. 2008).

## State Actor

The "ultimate issue" to determine whether a person is subject to a section 1983 action is whether "the alleged infringement of federal rights [is] 'fairly attributable to the State?'" *Rendell-Baker v. Kohn*, 457 U.S. 830, 838, 102 S.Ct. 2764 (1982) (quoting *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937, 102 S.Ct. 2744, 2754, 73 L.Ed.2d 482 (1982) (plaintiff must show that the defendant's "conduct allegedly causing the deprivation of a federal right be fairly attributable to the State.")). The U.S. Supreme Court has adopted a two-part test to address whether infringement is attributable to the state:

> Our cases have accordingly insisted that the conduct allegedly causing the deprivation of a federal right be **fairly attributable to the State**: These cases reflect a two-part approach to this question of "fair attribution." First, the deprivation must be caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the state or by a person for whom the State is responsible. . . Second, the party charged with the deprivation must be a person who **may fairly be said to be a state actor**. This may be because he is a state official, because he has acted together with or has obtained significant aid from state officials, or because his conduct is otherwise chargeable to the State. Without a limit such as this, private parties could face constitutional litigation whenever they seek to rely on some state rule governing their interactions with the community surrounding them. (Bold added.)

*Lugar,* 457 U.S. at 937, 102 S.Ct. 2744.

"When addressing whether a private party acted under color of law, we therefore start with the presumption that private conduct does not constitute governmental action." *Sutton v. Providence St. Joseph Medical Center,* 192 F.3d 826, 835 (9th Cir. 1999); *see Harvey v. Harvey*, 949 F.2d 1127, 1130 (11th Cir.1992) ("Only in rare circumstances can a private party be viewed as a 'state actor' for section 1983 purposes."); *Price v. Hawaii*, 939 F.2d 702, 707-08 (9th Cir.1991) ("[P]rivate parties are not generally acting under color of state law.") "§ 1983 excludes from its reach merely private conduct, no matter how discriminatory or wrong." *American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 119 S.Ct. 977, 985 (1999) (citation and internal quotation marks omitted).

However, "to act 'under color of' state law for § 1983 purposes does not require that the defendant be an officer of the State." *Dennis v. Sparks*, 449 U.S. 24, 27, 101 S.Ct. 183 (1980). "It is enough that he is a willful participant in joint action with the State or its agents. Private persons, jointly engaged with state officials in the challenged action, are acting 'under color' of law for purposes of § 1983 actions." *Dennis,* 449 U.S. at 27-28, 101 S.Ct. 183.

1       Dr. Thomas argues that the FAC lacks facts to qualify him as a state actor in that the FAC
2  identifies him as "an individual" residing in Kern County but specifically identifies others with ties to
3  Kern County.  Dr. Thomas notes that the complaint specifically identifies Kern County, its Department
4  of Human Services ("DHS") and CPS along with 10 Kern County officers, agents and/or employees and
5  that an "accord" with them had been reached with Dr. Deeths.  Dr. Thomas concludes that naming Dr.
6  Thomas as a defendant "indicates he falls outside of the category of the County's 'officers, agents, and
7  employees.'"

8       Dr. Thomas further contends the FAC lacks facts of a close nexus between the County and his
9  challenged conduct.  "State action may be found if, though only if, there is such a close nexus between
10 the State and the challenged action that seemingly private behavior may be fairly treated as that of the
11 State itself."  *Villegas v. Gilroy Garlic Festival Ass'n*, 541 F.3d 950, 955 (9th Cir.2008) (en banc) (citing
12 *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295, 121 S.Ct. 924 (2001)).  Dr.
13 Thomas argues that there is an insufficient nexus because his provision of medical care is not
14 traditionally and exclusively the County's prerogative.  State action arises "in the exercise by a private
15 entity of powers traditionally exclusively reserved to the State."  *Jackson v. Metropolitan Edison Co.*,
16 419 U.S. 345, 352, 95 S.Ct. 449 (1974).  Dr. Thomas concludes that the FAC alleges his acts and
17 judgments as a private party in that he performed no public function, was not compelled to act, the "did
18 not take custody of the children" from Dr. Deeths.

19      Dr. Deeths notes that she does not proceed on a close nexus theory in that the FAC alleges that
20 Dr. Thomas collaborated with Kern County social workers and public health nurses to "effectuate the
21 warrantless seizure" of RD and TD and to "present fabricated evidence and perjured testimony" and to
22 "suppress exculpatory information."  Dr. Deeths proceeds on a section 1983 conspiracy theory.

23      To establish the defendants' liability for a conspiracy, a plaintiff must demonstrate the existence
24 of "'an agreement or 'meeting of the minds' to violate constitutional rights.'"  *United Steelworkers of*
25 *America v. Phelps Dodge Corp.*, 865 F.2d 1539, 1540-41 (9th Cir.1989) (en banc) (quoting *Fonda v.*
26 *Gray*, 707 F.2d 435, 438 (9th Cir.1983)).  The defendants must have, "by some concerted action,
27 intend[ed] to accomplish some unlawful objective for the purpose of harming another which results in
28 damage."  *Gilbrook v. City of Westminster*, 177 F.3d 839, 856 (9th Cir.), *cert. denied,* 528 U.S. 1061,

120 S.Ct. 614 (1999). Such an agreement need not be overt, and may be inferred on the basis of circumstantial evidence such as the actions of the defendants. *Gilbrook*, 177 F.3d at 856. Whether defendants were involved in an unlawful conspiracy is generally a factual issue and should be resolved by the jury if the jury is able to infer from the circumstances that the alleged conspirators had a meeting of the minds and reached an understanding to achieve the conspiracy's objectives. *Mendocino Environmental Center v. Mendocino County*, 192 F.3d 1283, 1301-1302 (9th Cir.1999). "To be liable, each participant in the conspiracy need not know the exact details of the plan, but each participant must at least share the common objective of the conspiracy." *Phelps Dodge*, 865 F.2d at 1541.

### ***Warrantless Removal Of RD and TD***

"The Fourteenth Amendment guarantees that parents will not be separated from their children without due process of law except in emergencies." *Mabe v. San Bernardino County, Dept. of Public Social Services*, 237 F.3d 1101, 1107 (9th Cir. 2001); *see Ram v. Rubin*, 118 F.3d 1306,1310 (9th Cir.1997) ("it was clear that a parent had a constitutionally protected right to the care and custody of his children and that he could not be summarily deprived of that custody without notice and a hearing except when the children were in imminent danger").

"Government officials are required to obtain prior judicial authorization before intruding on a parent's custody of her child unless they possess information at the time of the seizure that establishes 'reasonable cause to believe that the child is in imminent danger of serious bodily injury and that the scope of the intrusion is reasonably necessary to avert that specific injury.'" *Mabe*, 237 F.3d at 1106 (quoting *Wallis v. Spencer*, 202 F.3d 1126, 1138 (9th Cir.2000)). "An indictment or serious allegations of abuse which are investigated and corroborated usually gives rise to a reasonable inference of imminent danger." *Ram,* 118 F.3d at 1311. "Moreover, the police cannot seize children suspected of being abused or neglected unless reasonable avenues of investigation are first pursued, particularly where it is not clear that a crime has been—or will be—committed." *Wallis*, 202 F.3d at 1138. "Officials . . . who remove a child from [his/her] home without a warrant must have reasonable cause to believe that the child is likely to experience serious bodily harm in the time that would be required to obtain a warrant." *Rogers v. County. of San Joaquin*, 487 F.3d 1288, 1294 (9th Cir.2007). The "state may not remove children from their parents' custody without a court order unless there is specific, articulable

11

evidence that provides reasonable cause to believe that a child is in imminent danger of abuse." *Wallis*, 202 F.3d at 1138.

Dr. Deeths argues that the FAC sufficiently alleges Dr. Thomas' "direct and personal involvement in the warrantless seizure" given allegations that Dr. Thomas:

1. Conspired to falsify BMH records;
2. Provided false information regarding RD's medical history at meetings with County employees and medical professionals;
3. Had specific knowledge of Kern County practices based on his experiences working with CPS; and
4. Schemed to present "unequivocal" reasons to detain RD and TD and knew such information would be presented in juvenile dependency proceedings to address removal of RD and TD from Dr. Deeths' care.

Dr. Deeths further points to FAC allegations that RD and TD were not subject to removal in absence of their imminent danger in the time necessary to obtain a warrant. Dr. Deeths concludes that Dr. Thomas has a "meeting of the minds" with state actors to jointly violate Dr. Deeths' familial association rights.

This Court agrees with Dr. Deeths that the FAC's allegations raise no less than inferences that Dr. Thomas conspired with state actors to result in the warrantless removal of RD and TD. The FAC alleges that Dr. Thomas was angry with Dr. Deeths and contributed to the perception that Dr. Deeths suffered from MPS. The FAC identifies Dr. Thomas' specific misrepresentations to induce CPS to remove RD and TD from Dr. Deeths. Although Dr. Thomas is not a County employee, the FAC's allegations and inferences are that he along with Kern County employees and others engaged in concerted action to accomplish the alleged unlawful objective to remove RD and TD without a warrant. Dr. Thomas' points that "separation was imposed by actual government officials, not Dr. Thomas" are unavailing given the FAC's allegations that his wrongs put in motion the removal of RD and TD. The FAC raises factual issues which cannot be resolved at this pleading stage to avoid dismissal Count 1 of the FAC's (first) section 1983 familial association claim.

### *Perjury And Fabrication Of Evidence*

There is no absolute immunity from claims of fabricating evidence during an investigation for

a juvenile dependency proceedings. *See Costanich v. Dept. of Social and Health Srvs.*, 627 F.3d 1101, 1109 (9th Cir. 2010); *Beltran v. Santa Clara County*, 514 F.3d 906, 908 (9th Cir. 2008); *see also Baldwin v. Placer County*, 418 F.3d 966, 971 (9th Cir. 2005) ("Conspiracy to violate a citizen's rights under the Fourth Amendment by lying to the magistrate is evidently as much a violation of an established constitutional right as the perjury itself. Whether there is sufficient evidence of the conspiracy is for a jury to decide. No immunity exists for the conspiracy").

Dr. Deeths contends that the complaint adequately alleges facts of Dr. Thomas' perjury and fabrication of evidence to result in the juvenile dependency proceedings and ultimate removal of RD and TD. As she did to support the warrantless seizure claim, Dr. Deeths points to FAC allegations that Dr. Thomas contributed to fabricate evidence that Dr. Deeths suffered from MSP. Dr. Deeths notes the FAC's allegations that Dr. Thomas conspired to falsify BMH records that Dr. Deeths precluded repeatedly nurses to "adjust O2 settings" and to "take vitals at appropriate times" despite the absence of contemporaneous notes that Dr. Deeths impaired oxygen management or "unilaterally and secretly altered oxygen levels." Dr. Deeths notes FAC's allegations of Dr. Thomas' misrepresentations regarding medical records, RD's test results and treatment, and Dr. Deeths' conduct, including restricting nurses and using a compression vest "for punitive purposes."

The FAC raises inferences that Dr. Thomas engaged in evidence fabrication to induce CPS to remove RD and TD. The FAC's inferences are that an angered Dr. Thomas took action to create the perception that Dr. Deeths suffered from MPS and mistreated RD. The FAC attributes to Dr. Thomas' specific misrepresentations to induce CPS to remove RD and TD from Dr. Deeths. Although Dr. Thomas is not a County employee, the FAC's allegations and inferences therefrom are that he along with Kern County employees and others engaged in concerted action to fabricate or coerce evidence to convince Kern County employees to remove RD and TD without a warrant. The FAC raises factual issues which cannot be resolved at this pleading stage to avoid dismissal Count 2 of the FAC's (first) section 1983 familial association claim.

**Collateral Estoppel**

In his opening papers, Dr. Thomas argues that Dr. Deeths' nolo contendere plea to a section

300(b) petition collaterally estops her claims against Dr. Thomas.[3] Dr. Deeths responds that collateral estoppel does not apply in the absence of a final judgment in the juvenile proceedings on the issues involved in this action.

Collateral estoppel or issue preclusion "prevents relitigation of issues actually litigated and necessarily decided, after a full and fair opportunity for litigation, in a prior proceeding." *Shaw v. Hahn*, 56 F.3d 1128, 1131 (1995). Collateral estoppel "bars relitigation of determinations necessary to the ultimate outcome of a prior proceeding." *Bobby v. Bies*, 556 U.S. 825, 829, 129 S.Ct. 2145 (2009). The "party against whom estoppel is asserted has litigated and lost in an earlier action." *Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 329, 99 S.Ct. 645 (1979).

"Issue preclusion . . . forecloses litigation only of those issues of fact or law that were actually litigated and necessarily decided by a valid and final judgment between the parties, whether on the same or a different claim." *Segal v. American Tel. and Tel. Co., Inc.*, 606 F.2d 842, 845 (9th Cir. 1979). "Issue preclusion bars the relitigation of issues actually adjudicated in previous litigation between the same parties." *Littlejohn v. U.S.*, 321 F.3d 915, 923 (9th Cir.), *cert. denied,* 540 U.S. 985, 124 S.Ct. 486 (2003). "The issue must have been 'actually decided' after a 'full and fair opportunity' for litigation." *Robi v. Five Platters, Inc.*, 838 F.2d 318, 322 (9th Cir. 1988).

Collateral estoppel applies to the section 1983 context in that there is "no reason to believe that Congress intended to provide a person claiming a federal right an unrestricted opportunity to relitigate an issue already decided in state court." *Allen v. McCurry*, 449 U.S. 90, 104, 101 S.Ct. 411 (1980). A "'federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered' under the Constitution's Full Faith and Credit Clause and under 28 U.S.C. § 1738." *Holcombe v. Hosmer*, 477 F.3d 1094, 1097 (9th Cir. 2007) (quoting *Migra v. Warren City School Dist. Bd. of Ed.*, 465 U.S. 75, 81, 104 S.Ct. 892 (1984)). "A party's ability to relitigate an issue decided in a prior state court determination depends on the law of the state in which the earlier litigation occurred." *Kinslow v. Ratzlaff*, 158 F.3d 1104, 1105 (10th Cir. 1998); *see Holcombe*, 477 F.3d at 1097 ("the court applies Nevada law concerning claim

---

[3] In his reply papers, Dr. Thomas alters course and states "the issue of collateral estoppel need not be resolved" because the state actor issue determines his motion to dismiss.

preclusion to the Nevada judgment.")

California law governs application of collateral estoppel to Dr. Deeths' nolo contendere plea.

### *Elements*

The party asserting collateral estoppel bears the burden to prove the doctrine's requirements. *First N.B.S. Corp. v. Gabrielsen*, 179 Cal.App.3d 1189, 1194, 225 Cal.Rptr. 254, 256 (1989). Threshold requirements to apply collateral estoppel are:

1. The issue to be precluded from relitigation must be **identical** to that decided in a former proceeding;
2. The issue must have been **actually litigated** in the former proceeding;
3. The issue must have been **necessarily decided** in the former proceeding;
4. The decision in the former proceeding must be **final and on the merits**; and
5. The party against whom preclusion is sought must be the **same as, or in privity with**, the party to the former proceeding.

*Lucido*, 51 Cal.3d at 341, 272 Cal.Rptr.2d at 769.[4]

Dr. Thomas champions satisfaction of the collateral estoppel elements. Dr. Deeths challenges litigation of identical issues and a final judgment to support collateral estoppel.

### *Identical Issues Actually Litigated*

"The application of the doctrine of collateral estoppel depends on whether the *issue* in both actions is the same, not whether the issue arises in the same *context*." *Gabrielsen*, 179 Cal.App.3d at 1195-1196, 225 Cal.Rptr. at 257 (italics in original). "[O]nly issues actually litigated in the initial action may be precluded from the second proceeding under the collateral estoppel doctrine. . . . An issue is actually litigated '[w]hen [it] is properly raised, by the pleadings or otherwise, and is submitted for

---

[4] Plaintiffs propose evaluation of the following similar collateral estoppel elements:

1. The issue at stake is **identical** to an issue raised in the prior litigation;
2. The issue was **actually litigated** in the prior litigation; and
3. The determination of the issue in the prior litigation must have been a **critical and necessary** part of the judgment in the earlier action.

*Littlejohn*, 321 F.3d at 923 (bold added).

determination, and is determined.'" *Gottlieb v. Kest*, 141 Cal.App.4th 110, 148, 46 Cal.Rptr.3d 7 (2006) (citations omitted).

"[C]ollateral estoppel cannot apply when the party against whom the earlier decision is asserted did not have a 'full and fair opportunity' to litigate that issue in the earlier case." *Allen v. McCurry*, 449 U.S. 90, 95, 101 S.Ct. 411 (1980). The "requirement of determining whether the party against whom an estoppel is asserted had a full and fair opportunity to litigate is a most significant safeguard." *Blonder-Tongue Laboratories, Inc. v. Univ. of Illinois*, 402 U.S. 313, 329, 91 S.Ct. 1434 (1979).

Dr. Thomas points to the FAC's acknowledgment of the juvenile dependency proceedings culminating in Dr. Deeths' nolo contendere plea. Dr. Thomas argues that the "circumstance that she pled no contest does not diminish the effect of the judicial determination she acknowledges to have been made against her." Dr. Thomas argues that Dr. Deeths is precluded to litigate alleged falsity of the allegations culminating in her no contest plea in that the juvenile proceedings were the time and place to do so.

Dr. Deeths responds that her claims in this action differ from the underlying juvenile dependency issues in that in this action she "seeks a vindication of her civil rights, not a redo of any issue relating to the best interests of her children." "Dependency proceedings are part of a comprehensive statutory scheme geared toward expediency, largely to serve the dependent child's best interests." *In re R.H.*, 170 Cal.App.4th 678, 697, 88 Cal.Rptr.3d 650 (2009). Dr. Deeths argues that the juvenile dependency proceedings did not address her "guilt or innocence" and "never decided whether Dr. Thomas deliberately fabricated the evidence."

Dr. Thomas fails to establish the identical issues and actual litigation factors. The key issue in the juvenile dependency proceedings was Dr. Deeths' custody terms. As to Dr. Thomas, this action addresses his alleged conspiracy and acts thereunder to induce the warrantless removal of RD and TD. Although issues from the juvenile dependency proceedings may overlap into this action, the pivotal issues at stake here were not actually litigated and necessarily decided in the juvenile dependency proceedings.

***Final Judgment***

Dr. Deeths argues there was no final judgment against her in that her nolo contendere plea and

16

the underlying juvenile dependency proceedings were dismissed with her successful appeal of the trial court's denial of her section 388 petition.

Dr. Deeths is correct that her successful appeal eliminates a final decision on merits against her.

### *Same Parties Or Privity*

In *Clemmer v. Hartford Ins. Co.*, 22 Cal.3d 865, 875, 151 Cal.Rptr. 285 (1978), the California Supreme Court examined the due process implications of collateral estoppel:

> In the context of collateral estoppel, due process requires that the party to be estopped must have had an identity or community of interest with, an adequate representation by, the losing party in the first action as well as the circumstances must have been such that the party to be estopped should reasonably have expected to be bound by the prior adjudication. Thus, in deciding whether to apply collateral estoppel, the court must balance the rights of the party to be estopped against the need for applying collateral estoppel in the particular case, in order to promote judicial economy by minimizing repetitive litigation, to prevent inconsistent judgments which undermine the integrity of the judicial system, or to protect against vexatious litigation.

*Clemmer*, 22 Cal.3d at 875, 151 Cal.Rptr. 285 (citations omitted); *see Lynch v. Glass*, 44 Cal.App.3d 943, 948, 119 Cal.Rptr. 139 (1975) ("collateral estoppel may be applied only if the requirements of due process are met").

There is an absence of privity between an underlying criminal prosecution and a subsequent section 1983 action. *See Hardesty v. Hamburg Tp.*, 461 F.3d 646, 651 (6th Cir. 2006) ("police officer defendants in a § 1983 case are not in privity with the prosecution of a related criminal case and do not have a personal stake in the outcome of the criminal case"); *McCoy v. Hernandez*, 203 F.3d 371, 375 (5th Cir. 2000) ("a § 1983 plaintiff may not invoke the doctrine of collateral estoppel against officers following a favorable ruling in a prior criminal proceeding"); *Kinslow*, 158 F.3d at 1106 ("The mere fact that [the officers] happen[ed] to be interested in a particular question, or in proving a state of facts as may have been presented in [the prior action,] . . . does not establish that they were in privity with any of the parties in that action. . . . Because the officers were neither parties nor privies to the prior state court determination and, therefore, did not have a full and fair opportunity to litigate in state court the constitutionality of the issues in this section 1983 action, the doctrine of issue preclusion does not apply to this case."); *Davis v. Eide*, 439 F.2d 1077, 1078 (9th Cir. 1971) ("The defendants were city police officers not directly employed by the state; they had no measure of control whatsoever over the criminal proceeding and no direct individual personal interest in its outcome. In these circumstances there was

no privity sufficient to invoke the doctrine of collateral estoppel.").

Although the juvenile dependency proceedings were not a criminal prosecution, they were similar to one. Based on the FAC's allegations, Dr. Thomas played a role similar to an investigating law enforcement officer. Analogizing the above authorities to the juvenile dependency proceedings reveals an absence of support for the same parties or privity factor.

In sum, Dr. Thomas fails to demonstrate he is entitled to a collateral estoppel bar as to the FAC's claims against him.

## CONCLUSION AND ORDER

For the reasons discussed above, this Court DENIES dismissal of the FAC's claims against Dr. Thomas and ORDERS Dr. Thomas, no later than July 3, 2013, to file and serve a F.R.Civ.P. 7(a)(2) answer to the FAC.

IT IS SO ORDERED.

**Dated:   June 12, 2013**          /s/  Lawrence J. O'Neill
                                     UNITED STATES DISTRICT JUDGE