# UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTINE DEETHS, | 1:12-CV-02096-LJO-JLT |
| Plaintiff, | **ORDER ON MOTION TO DISMISS FIRST AMENDED COMPLAINT** |
| v. | (Docs. 47) |
| LUCILE SLATER PACKARD CHILDREN'S HOSPITAL AT STANFORD, et al, | |
| Defendants. | |

## PRELIMINARY STATEMENT TO PARTIES AND COUNSEL

Judges in the Eastern District of California carry the heaviest caseload in the nation, and this Court is unable to devote inordinate time and resources to individual cases and matters. This Court cannot address all arguments, evidence and matters raised by parties and addresses only the arguments, evidence and matters necessary to reach the decision in this order given the shortage of district judges and staff. The parties and counsel are encouraged to contact the offices of United States Senators Feinstein and Boxer to address this Court's inability to accommodate the parties and this action. The parties are required to consider consent to a Magistrate Judge to conduct all further proceedings in that the Magistrate Judges' availability is far more realistic and accommodating to parties than that of U.S. District Judge Lawrence J. O'Neill who must prioritize criminal and older civil cases.

## INTRODUCTION

Plaintiff Christine Deeths ("Plaintiff") alleges civil rights, invasion of privacy, and slander claims against various Defendants[1] for their alleged involvement in the removal of her adopted

---

[1] Defendants are the County of Santa Clara; Lucile Salter Packard Children's Hospital at Stanford ("Stanford"); John Stirling, Jr.; Christopher Harris ("Dr. Harris"); Cedars-Sinai Medical Center; Anthony Thomas ("Dr. Thomas");

1

children from her home and the initiation of dependency proceedings. Pending before the Court is Defendant John Stirling, Jr. ("Dr. Stirling") and Defendant the County of Santa Clara's ("County") motion to dismiss. Dr. Stirling seeks to dismiss the 42 U.S.C. § 1983 claims alleged against him and the County seeks to dismiss Plaintiff's *Monell* claim. For the reasons discussed below, this Court GRANTS with leave to amend Dr. Stirling and the County's motion to dismiss Plaintiff's claims against them.

## BACKGROUND

### A. Facts[2]

In May 2006, Plaintiff, a medical doctor, adopted R.D. shortly after her birth, when R.D. was 10 hours old. At birth, R.D. tested positive for methamphetamine and marijuana intoxication.

#### a. R.D.'s Medical History

From birth, R.D. required specialized medical care. Throughout her life, she exhibited symptoms such as vomiting, poor weight gain, violent coughing, chronic congestion, respiratory problems, and hives. In December 2007, a pediatric gastroenterology specialist determined that R.D. exhibited symptoms of cystic fibrosis and began a course of treatment common for children with the disease. Despite the treatment, R.D. continued to have medical problems and was hospitalized at several facilities for various ailments. By late November 2010, R.D. was diagnosed with failure to thrive, cystic fibrosis, and constipation. She also received a presumptive diagnosis of celiac disease which required her to avoid gluten products. In addition, R.D. received treatment for lymphocytic colitis although she was not formally diagnosed with the disease until approximately December 29, 2010.

#### b. Events Giving Rise to the Lawsuit

##### i. Transfer to and Treatment at Stanford

In January of 2011, R.D. was treated at Bakersfield Memorial Hospital for approximately two weeks. After two weeks, Plaintiff alleges that Dr. Thomas and/or other Bakersfield Memorial staff contacted Dr. Stirling at Stanford and falsely told him that Plaintiff was suffering from Munchausen's

---

Bakersfield Memorial Hospital; Legacy Behavioral Services, Inc.; Tara Cruz; Eddie Cruz; and Does 1 through 50.

[2] The background facts are derived from the amended complaint. The Court accepts the factual allegations as true for purposes of this motion.

Syndrome by Proxy ("MSBP"), a disorder where a parent purportedly induces real or apparent symptoms of a disease in a child. Plaintiff was not informed that the main purpose of the transfer to Stanford was for Dr. Stirling, an expert in MSBP and a County employee, to investigate Plaintiff.

After R.D. was admitted at Stanford, Plaintiff was informed that a child abuse investigation had commenced. Shortly thereafter, Dr. Stirling introduced himself to Plaintiff as a child abuse specialist, informed Plaintiff that Bakersfield Memorial had filed a child abuse report against her, and that Kern County Child Protective Services had become involved.

### ii. SCAN Team Meeting

On January 20, 2011, Dr. Stirling held a Suspected Child Abuse and Neglect ("SCAN") team meeting which included R.D.'s primary care doctor and various Stanford medical staff. Plaintiff alleges that Dr. Stirling called the meeting in order to build a coalition of medical professionals willing to go along with his plan to falsely accuse her of suffering from MSBP. Plaintiff further alleges that Dr. Stirling told the medical professionals present that Plaintiff was improperly guiding the course of R.D.'s medical treatment and that there was nothing wrong with R.D. At the conclusion of the meeting, Plaintiff agreed to follow the medical advice of R.D.'s doctors. Dr. Stirling assured Plaintiff that, as long as she followed all of the doctor's recommendations, Child Protective Services would not take R.D. Despite this assurance, a social worker at Stanford, presumably at Dr. Stirling's direction, secretly filed a suspected child abuse report with Kern County Child Protective Services.

### iii. Dr. Stirling's SCAN Report

The following day, Dr. Stirling prepared a report on behalf of the SCAN team that contained numerous misrepresentations. Dr. Stirling "maliciously and falsely" represented that:

1. The Stanford team conclusively determined that R.D. did not have cystic fibrosis;
2. R.D. should discontinue pancreatic enzymes;
3. The Stanford team determined that R.D. does not have celiac disease;
4. R.D. does not have or meet the criteria for lymphocytic colitis;
5. R.D. did not have encorpesis or constipation; and
6. There was no objective evidence of serious pulmonary symptoms at any time.

Plaintiff alleges that Dr. Stirling actively suppressed the true findings of the Stanford team in order to

manufacture a MSBP case against her.  She further alleges that, in order to conceal these misdeeds, Dr. Stirling and/or others acting in concert prevented her from receiving a copy of R.D.'s medical records from Stanford despite her numerous requests and her statutorily guaranteed right of access.

### iv.     Discharge from Stanford

On January 23, 2011, R.D. was discharged from Stanford.  On January 27, 2011, a social worker and two public health nurses contacted Plaintiff.  At the conclusion of the meeting, the social worker indicated that the child abuse investigation would likely be wrapped up and that no further meetings appeared necessary.

### v.     Dr. Stirling's Call with Social Worker

On February 18, 2011, a social worker contacted Dr. Stirling regarding Plaintiff's case.  Plaintiff alleges that Dr. Stirling knowingly made several misrepresentations to the social worker in order to obtain Child Protective Services involvement with the case.  Dr. Stirling represented to the social worker that:

1.   R.D. merely has asthma;
2.   He wanted to take R.D. off pulmozyme and enzymes;
3.   Plaintiff could not be trusted because she lied to them in the past;
4.   While at Stanford, Plaintiff turned up R.D.'s oxygen levels;
5.   Plaintiff may have body image issues;
6.   Plaintiff believes that to keep R.D. sick is to keep her healthy; and
7.   R.D. has never been intubated.

Plaintiff further alleges that Dr. Stirling and the social worker reached an understanding that R.D. and her brother T.D. would be removed from Plaintiff's care and turned into wards of the state so that Dr. Stirling could further experiment with the children without Plaintiff's involvement.

### vi.     Team Decision Meeting

On February 24, 2011, a team decision meeting was held by phone between social workers, public health nurses, and several doctors including Dr. Stirling.  The group agreed that a concerted effort must be made to compile a list of "unequivocal" yet false reasons for seizing Plaintiff's children.  Plaintiff alleges that during the meeting, Dr. Stirling knowingly or with reckless disregard for the truth

4

repeated the same lies he perpetrated earlier and others. For instance, Dr. Stirling stated that:

    1.    Genetic tests ruled out the possibility of cystic fibrosis;

    2.    While at Stanford, Plaintiff turned the oxygen machine on after doctors turned it off;

    3.    R.D. did not have documented failure to thrive;

    4.    Plaintiff needed psychotherapy and R.D. needed play therapy; and

    5.    R.D. had never been intubated.

Plaintiff further alleges that when the social worker asked the doctors, including Dr. Stirling, whether they felt that R.D. was at risk and needed to be removed, all three emphatically agreed that R.D. should be removed from Plaintiff's care. In addition, Plaintiff alleges that the meeting participants, including Dr. Stirling, reached an agreement that Plaintiff's children should be removed, without a warrant or other court order, and that the reasons advanced in court documents should be uniform and unequivocal, even if they were not true.

### vii. Juvenile Dependency Proceedings

Allegedly as a result of Dr. Stirling's misrepresentations and bad faith refusal to provide Plaintiff with R.D.'s medical records, Plaintiff's children were seized by Kern County Child Protective Services and a juvenile dependency case was opened. On February 25, 2011, a social worker and two Bakersfield Police Department detectives seized R.D. and T.D. from Plaintiff's home without a warrant or court order. On March 2, 2011, a social worker filed juvenile dependency petitions on behalf of T.D. and R.D. which alleged that both children came within the protection of California Welfare and Institutions Code § 300. After eighty days of separation, Kern County offered Plaintiff a deal. If Plaintiff agreed to plead no contest plea to an amended petition under § 300(b), which alleged that Plaintiff's children were at risk due to Plaintiff having an anxiety disorder and that Plaintiff misrepresented R.D.'s symptoms such that R.D. endured unnecessary medical treatment, her visitation time with R.D. would be increased from two hours a week to "liberal" and all other allegations would be dropped. Plaintiff accepted the deal.

Plaintiff alleges that Kern County social workers and Bakersfield police have a regularly established custom and practice of seizing children from their homes without a warrant and fabricating evidence to support juvenile dependency petitions. Plaintiff further alleges that Dr. Stirling conspired

with Kern County Child Protective Services to have Plaintiff's children unlawfully removed from her home.

**B. Procedural History**

Plaintiff brought this action against all Defendants in this Court on December 28, 2012. On April 23, 2013, Plaintiff filed an amended complaint alleging four claims for relief: (1) violations of 42 U.S.C. § 1983; (2) a *Monell* claim; (3) invasion of privacy; and (4) slander. Relevant to the instant motion are Plaintiff's § 1983 claims against Dr. Stirling and a *Monell* claim against the County. In Plaintiff's § 1983 claim, she alleges that Dr. Stirling violated her Fourteenth Amendment right to familial association, privacy, warrantless seizure of child, and unlawful detention. She also alleges that Dr. Stirling violated her Fourteenth Amendment right to be free from falsification of evidence in juvenile court proceedings. In Plaintiff's *Monell* claim, she alleges that the County collaborated with Kern County to improperly curtail her constitutional rights by establishing and/or following policies, procedures, customs, and/or practices which were the moving force behind the violations of her constitutional rights. Dr. Stirling and the County filed the instant motion to dismiss the claims alleged against them for failure to state a claim on June 20, 2013. Plaintiff filed an opposition on July 11, 2013, and Dr. Stirling and the County filed a reply on July 18, 2013.

## DISCUSSION

### Motion to Dismiss

**A.   12(b)(6) Failure to State a Claim**

    **1.   Legal Standard**

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) is a challenge to the sufficiency of the allegations set forth in the complaint. A dismissal under Rule 12(b)(6) is proper where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balisteri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990). In considering a motion to dismiss for failure to state a claim, the court generally accepts as true the allegations in the complaint, construes the pleading in the light most favorable to the party opposing the motion, and resolves all doubts in the pleader's favor. *Lazy Y. Ranch LTD. v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008).

To survive a Fed. R. Civ. P. 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. (citing *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility for entitlement to relief" *Id*. (citing *Twombly*, 550 U.S. at 557).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal citations omitted). Thus, "bare assertions ... amount[ing] to nothing more than a formulaic recitation of the elements ... are not entitled to be assumed true." *Iqbal*, 129 S.Ct. at 1951. A court is "free to ignore legal conclusions, unsupported conclusions, unwarranted inferences and sweeping legal conclusions cast in the form of factual allegations." *Farm Credit Services v. American State Bank*, 339 F.3d 764, 767 (8th Cir. 2003) (citation omitted).

Moreover, a court "will dismiss any claim that, even when construed in the light most favorable to plaintiff, fails to plead sufficiently all required elements of a cause of action." *Student Loan Marketing Ass'n v. Hanes*, 181 F.R.D. 629, 634 (S.D.Cal. 1998). In practice, "a complaint ... must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Twombly*, 550 U.S. at 562 (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)).

To the extent that the pleadings can be cured by the allegation of additional facts, the plaintiff should be afforded leave to amend. *Cook, Perkiss and Liehe, Inc. v. Northern California Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990) (citations omitted).

**2.     Analysis**

**i.     Claims against Dr. Stirling**

Plaintiff alleges that Dr. Stirling violated § 1983 by conspiring with state actors to 1) effectuate the warrantless seizure of Plaintiff's children by Kern County CPS, and 2) present false and fabricated evidence to the juvenile court.

Dr. Stirling argues that Plaintiff alleges insufficient facts to show that he conspired to violate her constitutional rights. He contends that, because he is a private actor,[3] Plaintiff must plead facts to show that Dr. Stirling conspired with Kern County social workers to remove Plaintiff's children without a warrant to establish § 1983 liability. Plaintiff must also allege sufficient facts to show that Dr. Stirling conspired with Kern County social workers to suppress exculpatory evidence and use fabricated evidence during the juvenile dependency proceeding. Dr. Stirling argues that Plaintiff falls short of doing so. Finally, Dr. Stirling asserts that Plaintiff fails to plead facts to show that Dr. Stirling violated her rights under the First or Fifth Amendment.

"Section 1983 imposes two essential proof requirements upon a claimant: (1) that a person acting under color of state law committed the conduct at issue, and (2) that the conduct deprived the claimant of some right, privilege, or immunity protected by the Constitution or laws of the United States." *Leer v. Murphy*, 844 F.2d 628, 632–633 (9th Cir. 1988).

"Section 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144, n. 3 (1979)). Section 1983 and other federal civil rights statutes address liability "in favor of persons who are deprived of 'rights, privileges, or immunities secured' to them by the Constitution." *Carey v. Piphus*, 435 U.S. 247, 253 (1978) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 417 (1976)). "The first inquiry in any § 1983 suit, therefore, is whether the plaintiff has been deprived of a right 'secured by the Constitution and laws.'" *Baker v. McCollan*, 443 U.S. 137, 140 (1979). Stated differently, the first step in a section 1983 claim is to identify the specific

---

[3] Plaintiff nominally claims that Dr. Stirling, who is also employed by the County as well as by Stanford, is a state actor and acted within the scope of his employment with the County at all times relevant to this case. However, Plaintiff's allegations show that Dr. Stirling's involvement in this case includes only his actions as a private actor – specifically, as a child abuse specialist who evaluated and acquired knowledge of Plaintiff and R.D within the scope of his employment at Stanford. Therefore, the Court will evaluate Plaintiff's allegations within the conspiracy theory framework.

8

constitutional right allegedly infringed. *Albright*, 510 U.S. at 271. "Section 1983 imposes liability for violations of rights protected by the Constitution, not for violations of duties of care arising out of tort law." *Baker*, 443 U.S. at 146.

"A private party may be considered to have acted under color of state law when it engages in a conspiracy or acts in concert with state agents to deprive one's constitutional rights." *Fonda v. Gray*, 707 F.2d 435, 437 (9th Cir. 1983) (internal citations omitted). "To prove a conspiracy between private parties and the government under § 1983, an agreement or 'meeting of the minds' to violate constitutional rights must be shown." *Id*. at 438 (internal citations omitted). "To be liable, each participant in the conspiracy need not know the exact details of the plan, but each participant must at least share the common objective of the conspiracy." *United Steelworkers of Am. v. Phelps Dodge Corp*., 865 F.2d 1539, 1541 (9th Cir. 1989) (citing *Fonda*, 707 F.2d at 438). The mere furnishing of information to state actors does not constitute joint action under color of state law which renders a private citizen liable under § 1983. *Benavidez v. Gunnell*, 722 F.2d 615, 618 (10th Cir. 1983); *Butler v. Goldblatt Bros., Inc*., 589 F.2d 323, 327 (7th Cir. 1978). *See also*, *Radcliffe v. Rainbow Const. Co*., 254 F.3d 772, 783 (9th Cir. 2001) ("A relationship of cause and effect between the complaint and the prosecution is not sufficient, or every citizen who complained to a prosecutor would find himself in a conspiracy.").

### a. Unlawful Removal of Plaintiff's Children

Plaintiff alleges that Dr. Stirling violated § 1983 by conspiring with state actors to effectuate the warrantless seizure of Plaintiff's children by Kern County CPS.[4]

"The Fourteenth Amendment guarantees that parents will not be separated from their children without due process of law except in emergencies." *Mabe v. San Bernardino Cnty., Dep't of Pub. Soc. Servs*., 237 F.3d 1101, 1107 (9th Cir. 2001) (citing *Stanley v. Illinois*, 405 U.S. 645, 651 (1972). "Government officials are required to obtain prior judicial authorization before intruding on a parent's custody of her child unless they possess information at the time of the seizure that establishes 'reasonable cause to believe that the child is in imminent danger of serious bodily injury and that the

---

[4] Warrantless seizures of children from their parents are not per se unlawful. *See*, *infra*. Because Plaintiff's claims against Dr. Stirling fail the first prong of § 1983 analysis, the Court does not reach the second question of whether the warrantless seizure of Plaintiff's children here violated her constitutional rights.

9

scope of the intrusion is reasonably necessary to avert that specific injury.'" *Id*. (quoting *Wallis v. Spencer*, 202 F.3d 1126, 1138 (9th Cir. 2000)).

Plaintiff's own allegations contradict her theory that Dr. Stirling acted under color of state law by conspiring with state actors to seize and remove Plaintiff's children in violation of her constitutional rights.

First, Plaintiff alleges Dr. Stirling has had contact with a state actor two times. On February 18, 2011, a social worker contacted Dr. Stirling in relation to Kern County's child abuse investigation of Plaintiff. Then, on February 24, 2011, Dr. Stirling, social workers, other doctors, and public health nurses participated in a team decision telephone call that led to the state's seizure and removal of Plaintiff's children on February 25, 2011. During these contacts, Dr. Stirling furnished allegedly false information to the social workers about Plaintiff. However, the furnishing of information to state actors alone does not constitute joint action under color of state law which renders a private citizen liable under § 1983. *Benavidez*, 722 F.2d at 618; *Butler*, 589 F.2d at 327 (7th Cir. 1978).

Also, Plaintiff alleged that Kern County began investigating her for child abuse when Bakersfield Memorial Hospital filed a child abuse report against her. Kern County opened its investigation before Dr. Stirling ever met Plaintiff, and, ostensibly, without his involvement at all. *Compare*, *Phelps Dodge Corp*., 865 F.2d at 1540 ("Evidence that [state actors] failed to exercise independent judgment will support an inference of conspiracy with a private party.").

Likewise, Plaintiff's allegations that Dr. Stirling continued to make misrepresentations about Plaintiff during the February 24, 2011 telephone meeting do not show that he had reached a meeting of minds with social workers to violate Plaintiff's Fourteenth Amendment rights. Instead, Plaintiff's allegation that social workers asked Dr. Stirling and other doctors during the meeting whether R.D. was at risk suggests that no common consensus had yet been reached.

Moreover, as Dr. Stirling points out, Plaintiff does not allege that he played any direct part in the seizure or detention of Plaintiff's children. "In order for a private individual to be liable for a § 1983 violation when a state actor commits the challenged conduct, the plaintiff must establish that the private individual was the proximate cause of the violations." *Franklin v. Fox*, 312 F.3d 423, 445-46 (9th Cir. 2002) (citing *King v. Massarweh*, 782 F.2d 825, 829 (9th Cir.1986)). "Absent some

showing that a private party had some control over state officials' decision to commit the challenged act, the private party did not proximately cause the injuries stemming from the act." *Id*. at 446 (quoting *Massarweh*, 782 F.2d at 829) (internal quotation omitted). In her amended complaint, Plaintiff does not allege that Dr. Stirling controlled Kern County's decision to unlawfully remove Plaintiff's children. As discussed above, Dr. Stirling merely supplied allegedly misrepresentative information and medical opinions to Kern County social workers.

Finally, there are simply no alleged facts to support Plaintiff's assertion that Dr. Stirling wanted the state to seize Plaintiff's children "so that Dr. Stirling could further experiment with the children without [Plaintiff]'s involvement." (Doc. 21, ¶ 73).

Therefore, Plaintiff's allegations fall short of supporting a reasonable inference that Dr. Stirling "cloaked [himself] with the authority of the state in effecting" the seizure and detention of Plaintiff's children. *Howerton v. Gabica*, 708 F.2d 380, 385 (9th Cir. 1983).

### b.         Falsification of Evidence

Plaintiff further alleges that Dr. Stirling violated § 1983 by conspiring with state actors to present false and fabricated evidence to the juvenile court.

The Ninth Circuit recently established that "deliberately falsifying evidence in a child abuse investigation and including false evidentiary statements in a supporting declaration violates constitutional rights where it results in the deprivation of liberty or property interests" in either a civil or criminal proceeding. *Costanich v. Dep't of Soc. & Health Servs*., 627 F.3d 1101, 1115 (9th Cir. 2010). To sustain a deliberate fabrication of evidence claim, a plaintiff must, "*at a minimum*, point to evidence that supports at least one of the following two propositions: (1) Defendants continued their investigation of [plaintiff] despite the fact that they knew or should have known that he was innocent; or (2) Defendants used investigative techniques that were so coercive and abusive that they knew or should have known that those techniques would yield false information.." *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir.2001) (en banc) (emphasis in the original).

Again, Plaintiff's allegation that Dr. Stirling conspired with state actors to violate her constitutional rights is unsupported by the facts currently before the Court.

As discussed above, Dr. Stirling's contact with state actors consisted of providing allegedly

11

misrepresentative information and medical opinions about Plaintiff to Kern County social workers during two telephone calls in February 2011. Supplying information alone does not amount to conspiracy or joint action under color of state law. *Benavidez*, 722 F.2d at 618; *Butler*, 589 F.2d at 327 (7th Cir. 1978).

Plaintiff also does not allege that Dr. Stirling participated in the juvenile dependency proceeding. Thus, to show that Dr. Stirling proximately caused the violation of Plaintiff's constitutional rights, Plaintiff must allege facts to show that Dr. Stirling "had some control over state officials' decision" to falsify evidence at the dependency hearing. *Franklin*, 312 F.3d at 446. Plaintiff's accusation that Dr. Stirling was "highly motivated" to scheme with Kern County social workers during the February 18, 2011 call to unlawfully remove Plaintiff's children "so that Dr. Stirling could further experiment with the children without [Plaintiff]'s involvement' is wholly unsupported. Further, the social workers asking Dr. Stirling and other doctors for their professional opinion on whether Plaintiff's children should be removed during the February 24, 2011 telephone call does not show Dr. Stirling's control over how the social workers made that decision. On the contrary, the alleged facts show that the social workers requested and obtained information from the doctors for their own use in their investigation of Plaintiff. *See*, *Fonda*, 707 F.2d at 438 (stating that the mere acquiescence of private actors to the investigation request of state actors is insufficient to prove a conspiracy). Plaintiff alleges no facts to show that Dr. Stirling exerted control over how the social workers used the information they obtained from the doctors to reach a decision to falsify evidence at the juvenile dependency proceeding.

Therefore, Plaintiff does not adequately allege that Dr. Stirling acted under color of state law in the falsifying of evidence at the juvenile dependency hearing in violation of Plaintiff's constitutional rights.

For these reasons, the Court DISMISSES with leave to amend Plaintiff's claims against Dr. Stirling.

### ii. Claims against the County

In her second cause of action, Plaintiff alleges that the County and other private entities collaborated with Kern County through policies, procedures, and/or customs which were the moving

force behind the violations of Plaintiff's constitutional rights. The County argues that Plaintiff fails to state a claim under *Monell v. Department of Social Services*. 436 U.S. 658, 690-91 (1978).

*Monell* provides that a municipality can be liable under § 1983 only where the municipality itself causes the constitutional violation through a "policy or custom, whether made by its lawmakers or those whose edicts or acts may fairly be said to represent official policy." *Id*. at 694. Therefore, municipal liability in a § 1983 case may be premised upon: (1) an official policy; (2) a "longstanding practice or custom which constitutes the standard operating procedure of the local government entity;" (3) the act of an "official whose acts fairly represent official policy such that the challenged action constituted official policy;" or (4) where "an official with final policy-making authority delegated that authority to, or ratified the decision of, a subordinate." *Price v. Sery*, 513 F.3d 962, 966 (9th Cir. 2008).

Plaintiff alleges that the County violated § 1983 by establishing and/or following policies and practices of improperly detaining, removing, and examining children, fabricating evidence, falsely accusing parents of having undiagnosed mental disorders, and providing inadequate training and supervision of employees working in child abuse and dependency type proceedings. (Doc. 21 ¶ 129).

Plaintiff appears to allege three distinct *Monell* claims: (1) policies of constitutional violations; (2) a pattern and practice of constitutional violations; and (3) a failure to properly train employees. Plaintiff fails to allege sufficient facts to sustain a claim of *Monell* liability under any of these theories.

### a. Policies of Unconstitutional Action

Plaintiff has not alleged any facts as to the actual policies of the County of Santa Clara with regard to the type of events alleged. Plaintiff instead makes bare assertions that the County had a plethora of unconstitutional policies of various sorts, but offers no facts that give rise to the inference that the County actually had such policies. "In order to establish an official policy or custom sufficient for *Monell* liability, a plaintiff must show a constitutional right violation resulting from an employee acting pursuant to an expressly adopted official policy." *Delia v. City of Rialto*, 621 F.3d 1069, 1081 (9th Cir. 2010). Plaintiff claims that the "pleading under attack provides the factual premise for each alleged unconstitutional policy, custom, or practice." (Doc. 51, p. 14). However, Plaintiff's pleading

13

fails to provide any allegations as to the substance of the County's expressly adopted policies. As noted in *Iqbal*, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a claim. 129 S. Ct. at 1949. Plaintiff therefore fails to state a valid claim as to the express policies of the County which could give rise to *Monell* liability.

### b. Pattern and Practice of Unconstitutional Action

Plaintiff also alleges that the County followed several practices which were unconstitutional. To prevail on this theory, Plaintiff must prove "the existence of a widespread practice that ... is so permanent and well settled as to constitute a 'custom or usage' with the force of law." *Gillette v. Delmore*, 979 F.2d 1342, 1348 (9th Cir. 1992) (quoting *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988)). Yet, apart from the conclusory statements quoted above, the amended complaint contains no factual allegations from which a "longstanding practice or custom which constitutes the standard operating procedure of the local government entity" can be inferred. *Price*, 513 F.3d at 966. Rather, the complaint focuses on a single incident and provides no indication that similar conduct has occurred on other occasions. Without any evidence of repeated violations, the County cannot be said to have any longstanding practice which could give rise to *Monell* liability. Once again, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a claim." *Iqbal*, 129 S. Ct. at 1949. Plaintiff therefore fails to assert a pattern and practice claim as to any of the alleged conduct.

### c. Failure to Train

Plaintiff further alleges the County failed to provide adequate training and/or supervision which resulted in violations of her constitutional rights. While inadequacy of training may constitute a "policy" giving rise to *Monell* liability, "adequately trained [employees] occasionally make mistakes; the fact that they do says little about the training program or the legal basis for holding the [municipality] liable." *City of Canton v. Harris*, 489 U.S. 378, 379 (1989). Therefore, a claim of inadequate training is only cognizable under § 1983 "where [the County]'s failure to train reflects deliberate indifference to the constitutional rights of its inhabitants." *Id*. at 392. In order to show that a failure to train amounts to deliberate indifference, it is "ordinarily necessary" to demonstrate "a pattern of similar constitutional violations by untrained employees." *Connick v. Thompson*, 131 S. Ct.

1350, 1360 (2011).

As Plaintiff did not allege facts to show a pattern of violations, the Court analyzes this claim under the "single-incident" theory of liability. *Connick* affirmed the validity of the so-called "single-incident" theory earlier articulated in *Canton*, finding a particular showing of "obviousness … can substitute for the pattern of violations ordinarily necessary to establish municipal liability." *Connick*, 131 S. Ct. at 1361. In *Canton*, the Supreme Court discussed a hypothetical in which a city deploys an armed police force to capture fleeing felons without first training the officers in the constitutional limitations on the use of deadly force. *Canton*, 489 U.S. at 390 n.10. This hypothetical was an example of a circumstance in which a single incidence would trigger failure to train liability. *Id*. However, "*Canton* should not be read to infer deliberate indifference for failure to train after any violation, for in virtually every instance of a constitutional violation by a [municipal] employee, a § 1983 plaintiff will be able to point to something the [municipality] could have done to prevent the unfortunate incident." *Wereb v. Maui County.*, 830 F. Supp. 2d 1026, 1033 (D. Haw. 2011) (quoting *Connick*, 131 S. Ct. at 1363) (internal quotations omitted). Rather, "[t]he *Canton* hypothetical assumes that the armed police officers have no knowledge at all of the constitutional limits on the use of deadly force." *Connick*, 131 S. Ct. at 1363. Essentially, a single-incident theory can only arise in circumstances with "the complete absence of legal training that the Court imagined in *Canton*." *Id*.
 Here, Plaintiff claims her rights were violated by a County employee, but fails to allege that employees of the County had a complete absence of training on the issues alleged. To provide the County with adequate notice, Plaintiffs must do more than make a conclusory allegation that the County failed to train its employees. Plaintiff therefore fails to state a "failure to train" claim against the County.

For the above stated reasons, the County's motion to dismiss the Plaintiff's second cause of action against the County is GRANTED with leave to amend.

**CONCLUSION AND ORDER**

For the reasons discussed above, the Court DISMISSES with leave to amend Plaintiff Christine Deeths' first cause of action for violations of 42 U.S.C. § 1983 against Defendant John Stirling, Jr., and second cause of action for violations of 42 U.S.C. § 1983 against Defendant the

County of Santa Clara.

Plaintiff shall have ***one opportunity*** to file and serve a second amended complaint in an attempt to cure the deficiencies described herein. Any such further amended complaint shall be filed and served within 20 days of electronic service of this order. Defendants no later than 20 days after service of the second amended complaint shall file a response thereto.

IT IS SO ORDERED.

Dated:   **July 31, 2013**          /s/ Lawrence J. O'Neill
                                    UNITED STATES DISTRICT JUDGE