1
2
3
4

# UNITED STATES DISTRICT COURT

5

# FOR THE EASTERN DISTRICT OF CALIFORNIA

6
7

| | |
|---|---|
| CHRISTINE DEETHS, | 1:12-CV-02096-LJO-JLT |
| Plaintiff, | **ORDER ON MOTIONS TO DISMISS SECOND AMENDED COMPLAINT** |
| v. | (Docs. 58, 60, 61) |
| LUCILE SLATER PACKARD CHILDREN'S HOSPITAL AT STANFORD, et al, | |
| Defendants. | |

8
9
10
11
12
13
14
15

## PRELIMINARY STATEMENT TO PARTIES AND COUNSEL

16          Judges in the Eastern District of California carry the heaviest caseload in the nation, and this

17  Court is unable to devote inordinate time and resources to individual cases and matters.  This Court

18  cannot address all arguments, evidence and matters raised by parties and addresses only the arguments,

19  evidence and matters necessary to reach the decision in this order given the shortage of district judges

20  and staff.  The parties and counsel are encouraged to contact the offices of United States Senators

21  Feinstein and Boxer to address this Court's inability to accommodate the parties and this action.  The

22  parties are required to consider consent to a Magistrate Judge to conduct all further proceedings in that

23  the Magistrate Judges' availability is far more realistic and accommodating to parties than that of U.S.

24  District Judge Lawrence J. O'Neill who must prioritize criminal and older civil cases.

25

## INTRODUCTION

26          Plaintiff Christine Deeths ("Plaintiff") alleges civil rights, invasion of privacy, and defamation

27
28

claims against various Defendants[1] for their alleged involvement in the removal of her adopted children from her home and the initiation of dependency proceedings.  Pending before the Court are motions to dismiss by Defendant John Stirling, Jr. ("Dr. Stirling"), Defendant the County of Santa Clara's ("County"), Defendant Cedars-Sinai Medical Center ("Cedars-Sinai"), Defendant Christopher Harris ("Dr. Harris"), and Defendant Lucile Packard Children's Hospital at Stanford ("Stanford"), (collectively, "Defendants").  These Defendants move the Court to dismiss the claims alleged against them in Plaintiff's Second Amended Complaint.  For the reasons discussed below, this Court GRANTS without leave to amend Dr. Stirling and the County's motion to dismiss and GRANTS with leave to amend Dr. Harris and Cedars-Sinai's motion to dismiss and Stanford's motion to dismiss.

## BACKGROUND

### A.    Facts[2]

In May 2006, Plaintiff, a medical doctor, adopted R.D. shortly after her birth, when R.D. was 10 hours old.  At birth, R.D. tested positive for methamphetamine and marijuana intoxication.

#### 1.    R.D.'s Medical History

From birth, R.D. required specialized medical care.  Throughout her life, she exhibited symptoms such as vomiting, poor weight gain, violent coughing, chronic congestion, respiratory problems, and hives.  In December 2007, a pediatric gastroenterology specialist determined that R.D. exhibited symptoms of cystic fibrosis and began a course of treatment common for children with the disease.  Despite the treatment, R.D. continued to have medical problems and was hospitalized at several facilities for various ailments.  By late November 2010, R.D. was diagnosed with failure to thrive, cystic fibrosis, and constipation.  She also received a presumptive diagnosis of celiac disease which required her to avoid gluten products.  In addition, R.D. received treatment for lymphocytic colitis although she was not formally diagnosed with the disease until approximately December 29, 2010.

#### 2.    Events Giving Rise to the Lawsuit

---

[1] Plaintiff brought this action against the County of Santa Clara; Lucile Salter Packard Children's Hospital at Stanford; John Stirling, Jr.; Christopher Harris; Cedars-Sinai Medical Center; Anthony Thomas; Bakersfield Memorial Hospital; Legacy Behavioral Services, Inc.; Tara Cruz; Eddie Cruz; and Does 1 through 50.

[2] The background facts are derived from the complaint.

### a.    Transfer to and Treatment at Stanford

In January 2011, R.D. was treated at Bakersfield Memorial Hospital for approximately two weeks.  Shortly after R.D. was admitted at Bakersfield, medical professionals at Bakersfield contacted Dr. Harris at Cedars-Sinai, where R.D. had been treated previously.  Plaintiff alleges that Dr. Harris falsely suggested that R.D. never had been diagnosed with cystic fibrosis and that Plaintiff possibly was subjecting R.D. to unnecessary medical treatment.  Plaintiff further alleges that Dr. Thomas and/or other Bakersfield Memorial staff contacted Dr. Stirling at Stanford and falsely told him that Plaintiff was suffering from Munchausen's Syndrome by Proxy ("MSBP"), a disorder where a parent purportedly induces real or apparent symptoms of a disease in a child.  Plaintiff was not informed that the main purpose of the transfer to Stanford was for Dr. Stirling, an expert in MSBP and a County employee, to investigate Plaintiff.

After R.D. was admitted at Stanford, Plaintiff was informed that a child abuse investigation had commenced.  Shortly thereafter, Dr. Stirling introduced himself to Plaintiff as a child abuse specialist and informed her that Bakersfield Memorial had filed a child abuse report against her and that Kern County Child Protective Services had become involved.

### b.    SCAN Team Meeting

On January 20, 2011, a Suspected Child Abuse and Neglect ("SCAN") Team meeting was held and included R.D.'s primary care doctor and various Stanford medical staff.  Plaintiff alleges that Dr. Stirling called the meeting in order to build a coalition of medical professionals willing to go along with his plan to falsely accuse her of suffering from MSBP.  Plaintiff further alleges that Dr. Stirling told the medical professionals present that Plaintiff was improperly guiding the course of R.D.'s medical treatment and that there was nothing wrong with R.D.

At the conclusion of the meeting, Plaintiff agreed to follow the medical advice of R.D.'s doctors.   Dr. Stirling assured Plaintiff that, as long as she followed all of the doctor's recommendations, Child Protective Services would not take R.D.

Plaintiff alleges that Dr. Stirling asked a medical social worker at Stanford to contact Kern County CPS regarding R.D. and that Dr. Stirling himself called Kern CPS shortly after the meeting.

### c.   SCAN Report

The following day, Dr. Stirling prepared a report on behalf of the SCAN team that contained numerous misrepresentations.   In that report, Dr. Stirling allegedly "concocted numerous lies and misrepresentations and fabrications," including that:

1.   The Stanford team conclusively determined that R.D. did not have cystic fibrosis;

2.   R.D. should discontinue pancreatic enzymes;

3.   The Stanford team determined that R.D. does not have celiac disease;

4.   R.D. does not have or meet the criteria for lymphocytic colitis;

5.   R.D. did not have encorpesis or constipation; and

6.   There was no objective evidence of serious pulmonary symptoms at any time.

Plaintiff alleges that Dr. Stirling actively suppressed the true findings of the Stanford team in order to manufacture a MSBP case against her.  She further alleges that, in order to conceal these misdeeds, Dr. Stirling instructed Stanford to refrain from releasing to Plaintiff a copy of R.D.'s medical records from Stanford despite her numerous requests and her statutorily guaranteed right of access.

### d.   Discharge from Stanford

On January 23, 2011, R.D. was discharged from Stanford.  Two weeks after discharge, R.D. became sick again and eventually was admitted to San Joaquin Hospital.  After her condition stabilized sufficiently for her to be released, Dr. Harris from Cedars-Sinai and the doctors at San Joaquin hospital disagreed as to whether R.D. should be treated with oxygen at home.   Plaintiff alleges that, on or around February 17, 2011, a telephone call took place between Dr. Stirling, Dr. Harris, and doctors from San Joaquin Hospital and from Stanford regarding R.D.

### e.   Contact with Social Worker Email Follow-up

On February 18, 2011, Dr. Stirling contacted a Kern County social worker regarding Plaintiff's case.  Plaintiff alleges that Dr. Stirling knowingly made several misrepresentations to the social worker in order to obtain Child Protective Services involvement with the case.  Dr. Stirling represented to the social worker that he believed Plaintiff suffered from MSBP and that R.D. should be removed from her care.  Specifically, he represented to the social worker that:

1.   R.D. merely has asthma;

2.      He wanted to take R.D. off pulmozyme and enzymes;

3.      Plaintiff could not be trusted because she lied to them in the past;

4.      While at Stanford, Plaintiff turned up R.D.'s oxygen levels;

5.      Plaintiff may have body image issues;

6.      Plaintiff believes that to keep R.D. sick is to keep her healthy; and

7.      R.D. has never been intubated.

Plaintiff alleges that Dr. Stirling and the social worker agreed that R.D. would be removed from Plaintiff's care.

After this contact, Dr. Stirling sent an email to Dr. Harris and the social worker regarding Plaintiff and R.D.

### f.      Team Decision Meeting

On February 24, 2011, a Team Decision Meeting was held by phone between social workers, public health nurses, and several doctors including Dr. Stirling and Dr. Harris. The group agreed that a concerted effort must be made to compile a list of allegedly false "unequivocal" reasons for seizing Plaintiff's children. Plaintiff alleges that during the meeting, each of the three doctors knowingly or with reckless disregard for the truth stated various lies about R.D.'s condition and Plaintiff.

Plaintiff further alleges that when the social worker asked the doctors, including Dr. Stirling and Dr. Harris, whether they felt that R.D. was at risk and needed to be removed, all three emphatically agreed that R.D. should be removed from Plaintiff's care. In addition, Plaintiff alleges that the meeting participants, including Dr. Stirling, reached an agreement that Plaintiff's children should be removed, without a warrant or other court order, and that the reasons advanced in court documents should be uniform and unequivocal.

### g.      Juvenile Dependency Proceedings

Allegedly as a result of Dr. Stirling's misrepresentations and bad faith refusal to provide Plaintiff with R.D.'s medical records, Plaintiff's children were seized by Kern County Child Protective Services and a juvenile dependency case was opened. On February 25, 2011, a social worker and two Bakersfield Police Department detectives seized R.D. and T.D. from Plaintiff's home without a warrant or court order. On March 2, 2011, a social worker filed juvenile dependency petitions on

behalf of T.D. and R.D. which alleged that both children came within the protection of California Welfare and Institutions Code § 300.  After eighty days of separation, Kern County offered Plaintiff a deal.  If Plaintiff agreed to plead no contest plea to an amended petition under § 300(b), which alleged that Plaintiff's children were at risk due to Plaintiff having an anxiety disorder and that Plaintiff misrepresented R.D.'s symptoms such that R.D. endured unnecessary medical treatment, her visitation time with R.D. would be increased from two hours a week to "liberal" and all other allegations would be dropped.  Plaintiff accepted the deal.

Plaintiff alleges that Kern County social workers and Bakersfield police have a regularly established custom and practice of seizing children from their homes without a warrant and fabricating evidence to support juvenile dependency petitions.  Plaintiff further alleges that Dr. Stirling knew of this practice.

Overall, Plaintiff alleges that Dr. Stirling schemed to separate R.D. from Plaintiff to experiment on R.D. in order to prove his MSBP case against Plaintiff even though Dr. Stirling knew Plaintiff did not suffer from MSBP.

**B.    Procedural History**

Plaintiff brought this action against all Defendants in this Court on December 28, 2012.  On April 23, 2013, Plaintiff filed a first amended complaint alleging four claims for relief: (1) violations of 42 U.S.C. § 1983; (2) a *Monell* claim; (3) invasion of privacy; and (4) slander.  On July 31, 2013, this Court granted with leave to amend Dr. Stirling and the County's motion to dismiss the claims against them in Plaintiff's first amended complaint.  Plaintiff filed a second amended complaint, the operative complaint, on August 20, 2013.  On September 6, 2013, Stanford filed the instant motion to dismiss the claims against it in Plaintiff's second amended complaint.  On September 9, 2013, Dr. Harris and Cedars-Sinai and Dr. Stirling and the County filed the instant motions to dismiss the claims against them in Plaintiff's complaint.  Plaintiff then filed oppositions to each motion on October 11, 2013, and Defendants filed replies on October 24, 2013.

Relevant to the instant motions are Plaintiff's § 1983 claims against Dr. Stirling, Dr. Harris, Stanford, and Cedars-Sinai and *Monell* claims against the County, Cedars-Sinai, and Stanford.  In Plaintiff's § 1983 claim, she alleges that Dr. Stirling Dr. Harris, Stanford, and Cedars-Sinai violated

6

her Fourteenth Amendment right to familial association, privacy, warrantless seizure of child, and unlawful detention.  She also alleges that Dr. Stirling and Dr. Harris violated her Fourteenth Amendment right to be free from falsification of evidence in juvenile court proceedings.  In Plaintiff's *Monell* claim, she alleges that the County, Cedars-Sinai, and Stanford collaborated with Kern County to improperly curtail her constitutional rights by following policies and practices which were the moving force behind the violations of her constitutional rights.

## DISCUSSION

### Fed. R. Civ. P. 12(b)(6) Failure to State a Claim

**A.   Legal Standard**

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) is a challenge to the sufficiency of the allegations set forth in the complaint.  A dismissal under Rule 12(b)(6) is proper where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balisteri v. Pacifica Police Dept*., 901 F.2d 696, 699 (9th Cir. 1990).  In considering a motion to dismiss for failure to state a claim, the court generally accepts as true the allegations in the complaint, construes the pleading in the light most favorable to the party opposing the motion, and resolves all doubts in the pleader's favor. *Lazy Y. Ranch LTD. v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008).

To survive a Fed. R. Civ. P. 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. (citing *Twombly*, 550 U.S. at 556).  "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility for entitlement to relief" *Id*. (citing *Twombly*, 550 U.S. at 557).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires

more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal citations omitted). Thus, "bare assertions ... amount[ing] to nothing more than a formulaic recitation of the elements ... are not entitled to be assumed true." *Iqbal*, 129 S.Ct. at 1951. A court is "free to ignore legal conclusions, unsupported conclusions, unwarranted inferences and sweeping legal conclusions cast in the form of factual allegations." *Farm Credit Services v. American State Bank*, 339 F.3d 764, 767 (8th Cir. 2003) (citation omitted).

Moreover, a court "will dismiss any claim that, even when construed in the light most favorable to plaintiff, fails to plead sufficiently all required elements of a cause of action." *Student Loan Marketing Ass'n v. Hanes*, 181 F.R.D. 629, 634 (S.D.Cal. 1998). In practice, "a complaint ... must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Twombly*, 550 U.S. at 562 (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)).

To the extent that the pleadings can be cured by the allegation of additional facts, the plaintiff should be afforded leave to amend. *Cook, Perkiss and Liehe, Inc. v. Northern California Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990) (citations omitted).

**B.    Analysis**

**1.    § 1983 Claims against Dr. Stirling, Dr. Harris, Stanford, and Cedars-Sinai**

Plaintiff alleges that Dr. Stirling, Dr. Harris, Stanford, and Cedars-Sinai violated § 1983 by acting under the color of state law to effectuate the warrantless seizure of Plaintiff's children by Kern County CPS. Plaintiff further alleges that Dr. Stirling and Dr. Harris violated § 1983 by acting under the color of state law to present false and fabricated evidence to the juvenile court.

"Section 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144, n. 3 (1979)). "Section 1983 imposes two essential proof requirements upon a claimant: (1) that a person acting under color of state law committed the conduct at issue, and (2) that the conduct deprived the claimant of some right, privilege, or immunity protected by the Constitution or laws of the United States." *Leer v. Murphy*, 844 F.2d 628, 632–633 (9th Cir. 1988).

a.    **§ 1983 Prong 1: Whether Defendants were acting under color of state law**

Plaintiff alleges that Dr. Stirling was acting under the color of state law because 1) he is an employee of Santa Clara County rather than of Stanford and, therefore, he was acting within the scope of his employment with the County at all times relevant to this action; and 2) he conspired with Kern County social workers to violate Plaintiff's constitutionally protected rights.  Plaintiff further alleges that the remaining § 1983 Defendants were acting under the color of state law because they conspired with state actors to violate Plaintiff's constitutionally protected rights. [3]

i.    **Whether Dr. Stirling was a State Actor**

"The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'"  *West v. Atkins*, 487 U.S. 42, 49 (1988) (quoting *United States v. Classic*, 313 U.S. 299, 326 (1941).  The Supreme Court has "insisted that the conduct allegedly causing the deprivation of a federal right be fairly attributable to the State" and adopted a "two-part approach to this question of 'fair attribution.'"  *Lugar v. Edmondson Oil Co., Inc.*, 457 U.S. 922, 937 (1982).  "First, the deprivation must be caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the state or by a person for whom the State is responsible."  *Id.*  "Second, the party charged with the deprivation must be a person who may fairly be said to be a state actor."  *Id.*

Dr. Stirling is employed by Santa Clara County at the Santa Clara Valley Medical Center. ("SCVMC") (Doc. 62, Exh. A).  Stanford, a private entity, has a child abuse screening program called the SCAN Team.  (Doc. 62, Exh. B).  SCVMC and Stanford have a contractual partnership under which a SCVMC child abuse expert serves as a consultant on Stanford's SCAN Team.  *Id.*  Stanford's SCAN Team is comprised of a medical doctor, a child abuse certified social worker, a child abuse

---

[3] Plaintiff's allegation that Defendants were acting under the color of state law is a conclusory statement that the Court is not obligated to accept as true.  *SFPP, L.P. v. Union Pac. R. Co.*, 274 F. App'x 549, 550 (9th Cir. 2008) (citing *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir. 1994)) ("Although SFPP alleged that the railroad is a state actor, that allegation is a legal conclusion that we need not, and do not, accept.").  *See also*, *Price v. Hawaii*, 939 F.2d 702, 708 (9th Cir. 1991) ("[A] defendant is entitled to more than the bald  legal conclusion that there was action under color of state law.").

1   certified nurse practitioner, a hospitalist, and a SCVMC consultant.  *Id*.  Here, Dr. Stirling served as

2   the SCVMC consultant on Stanford's SCAN Team that handled R.D.'s case.  The alleged facts

3   indicate that it is in this capacity that Dr. Stirling met and interacted with Plaintiff, rather than at

4   SCVMC.

5           The Supreme Court has held that a private physician who contracts with the state to provide

6   medical services to inmates is liable under § 1983 for conduct undertaken in performing his duties that

7   allegedly violated an inmate's constitutionally protected rights.  *West*, 487 U.S. at 54.  The Court found

8   that "[s]uch conduct is fairly attributable to the State."  *Id*.

9           However, neither the Supreme Court nor the Ninth Circuit has spoken clearly on the opposite

10  situation: whether a state employee physician under contract with a private hospital to provide medical

11  consultation services as part of a team to the private hospital's patients can be held liable under § 1983

12  for conduct undertaken in performing his duties at the hospital.

13          "Employment by the state is relevant, but not conclusive, to the question of color of law."

14  *Anthony v. Cnty. of Sacramento, Sheriff's Dep't*, 845 F. Supp. 1396, 1400 (E.D. Cal. 1994) (citing *Polk*

15  *County v. Dodson*, 454 U.S. 312, 321 (1981).  "For that reason, the Ninth Circuit looks to the nature of

16  the conduct involved, as well as the surrounding circumstances, and not simply to the defendant's

17  official capacity."  *Id*. (citing *Traver v. Meshriy*, 627 F.2d 934, 938 (9th Cir. 1980) for its analysis of

18  circumstances surrounding an off-duty police officer's conduct for "indicia of state action").  "Whether

19  a state employee acts under color of law turns on the relationship of the wrongful act to the

20  performance of the defendant's state duties."  *Id*. (citing *Dang Vang v. Vang Xiong X Toyed*, 944 F.2d

21  476, 479 (9th Cir. 1991)).

22          Here, part of Dr. Stirling's duties as a state physician at SCVMC is to serve as a consultant

23  on Stanford's SCAN Team.  The SCAN Team "consults on suspected child abuse cases initiated by a

24  social worker, and meets regularly to review all Child Protective Services referrals and consultations."

25  (Doc. 62, Exh. 2).  Specifically, the SCAN Team is charged with providing "inpatient consultation

26  services on suspected physical and sexual abuse" and "outpatient consultation services on emergent

27  cases."  *Id*.  The SCAN Team program "may be activated by contacting any hospital social worker at

28  any time."  *Id*.

Plaintiff alleges that Dr. Stirling abused his state-given power and authority by causing and directing Kern County CPS to remove R.D. from Plaintiff's care without a warrant, court order, or exigent circumstances.  Plaintiff further alleges that Dr. Stirling abused his power and authority by preventing Stanford from releasing to Plaintiff R.D.'s medical records and falsifying and suppressing evidence that was used at the juvenile dependency hearing.

To be liable under § 1983, Dr. Stirling must have "exercised power 'possessed by virtue of state law and made possible only because [he] is clothed with the authority of state law.'"  *West*, 487 U.S. at 49 (quoting *Classic*, 313 U.S. at 326).  The SCAN Team acts as a consultant to social workers on suspected and emergent child abuse cases initiated by social workers.  (Doc. 62, Exh. 2).  In fact, Dr. Stirling's role on the Scan Team is contracted consultant rather than full member.  *Id*.  Therefore, the extent of Dr. Stirling's power and authority here is as a consultant to a group who then acts as a consultant to social workers.  Dr. Stirling's representation of his professional opinion as to R.D. certainly may influence the overall opinion and report of the SCAN Team which in turn may influence a social worker's handling of his or her child abuse case regarding R.D.  However, under the facts alleged, Dr. Stirling's state-given authority does not appear to cover controlling the social worker's decision to remove a suspected child abuse victim from her mother or the manner in which such removal is carried out.  Rather, the decision to remove R.D. from Plaintiff's care and the manner in which R.D. was removed – the conduct that allegedly violated Plaintiff's constitutional rights – appear to be firmly within the authority of Kern County social workers and CPS.  Plaintiff has not alleged sufficient facts to show that this authority was in fact granted to Dr. Stirling by the state.

The alleged facts also fail to show that the state gave Dr. Stirling authority over R.D.'s medical records or that Dr. Stirling exercised control over R.D.'s medical records.  Further, Plaintiff alleges no facts to show that Dr. Stirling held state-given authority as a consultant on the SCAN Team to prevent Stanford from releasing a patient's medical records.  Rather, the authority to make decisions on whether and when to release Stanford patients' medical records appears to belong to Stanford. Plaintiff also has alleged no facts to show that this authority was in fact granted to Dr. Stirling by the state.

Dr. Stirling cannot be said to abuse state-given power that he does not possess and that the

1 state never granted to him. *West*, 487 U.S. at 49 (citing *Classic*, 313 U.S. at 326). For these reasons,

2 Dr. Stirling was not a state actor for the purposes of § 1983 liability.

3                          **ii.**         **Whether any of the § 1983 Defendants Conspired with Kern**

4                                          **County**

5        "[P]rivate parties are not generally acting under color of state law, and ... conclusionary

6 allegations, unsupported by facts, will be rejected as insufficient to state a claim under the Civil Rights

7 Act." *Price v. Hawaii*, 939 F.2d 702, 707–708 (9th Cir. 1991) (internal alterations and quotation

8 marks omitted). Therefore, courts "start with the presumption that private conduct does not constitute

9 governmental action." *Sutton v. Providence St. Joseph Medical Ctr.*, 192 F.3d 826, 835 (9th Cir.

10 1999).

11        "A private party may be considered to have acted under color of state law when it engages in

12 a conspiracy or acts in concert with state agents to deprive one's constitutional rights." *Fonda v. Gray*,

13 707 F.2d 435, 437 (9th Cir. 1983) (internal citations omitted). "To prove a conspiracy between private

14 parties and the government under § 1983, an agreement or 'meeting of the minds' to violate

15 constitutional rights must be shown." *Id.* at 438 (internal citations omitted). "To be liable, each

16 participant in the conspiracy need not know the exact details of the plan, but each participant must at

17 least share the common objective of the conspiracy." *United Steelworkers of Am. v. Phelps Dodge*

18 *Corp.*, 865 F.2d 1539, 1541 (9th Cir. 1989) (citing *Fonda*, 707 F.2d at 438). "[A] bare allegation of ...

19 joint action will not overcome a motion to dismiss." *Dietrich v. John Ascuaga's Nugget*, 548 F.3d 892,

20 900 (9th Cir. 2008) (internal citation omitted). The mere furnishing of information to state actors does

21 not constitute joint action under color of state law which renders a private citizen liable under § 1983.

22 *Benavidez v. Gunnell*, 722 F.2d 615, 618 (10th Cir. 1983); *Butler v. Goldblatt Bros., Inc.*, 589 F.2d

23 323, 327 (7th Cir. 1978). *See also*, *Radcliffe v. Rainbow Const. Co.*, 254 F.3d 772, 783 (9th Cir. 2001)

24 ("A relationship of cause and effect between the complaint and the prosecution is not sufficient, or

25 every citizen who complained to a prosecutor would find himself in a conspiracy."). Rather, joint

26 action "requires a substantial degree of cooperative action." *Collins v. Womancare*, 878 F.2d 1145,

27 1154 (9th Cir. 1989).

28        Plaintiff alleges that Dr. Stirling, Dr. Harris, Stanford, and Cedars-Sinai violated § 1983 by

conspiring with state actors to effectuate the warrantless seizure of Plaintiff's children by Kern County CPS.[4]  Plaintiff further alleges that Dr. Stirling and Dr. Harris violated § 1983 by conspiring with state actors to present false and fabricated evidence to the juvenile court.  However, Plaintiff does not allege that any Defendant played a direct part in the seizure or detention of Plaintiff's children or participated in the juvenile dependency proceeding.

"In order for a private individual to be liable for a § 1983 violation when a state actor commits the challenged conduct, the plaintiff must establish that the private individual was the proximate cause of the violations." *Franklin v. Fox*, 312 F.3d 423, 445-46 (9th Cir. 2002) (citing *King v. Massarweh*, 782 F.2d 825, 829 (9th Cir. 1986)).  "Absent some showing that a private party had some control over state officials' decision to commit the challenged act, the private party did not proximately cause the injuries stemming from the act." *Id.* at 446 (quoting *Massarweh*, 782 F.2d at 829) (internal quotation omitted).

Therefore, the relevant inquiry is whether Plaintiff alleged sufficient facts to show that each Defendant engaged in joint action with Kern County and held and exercised some control over Kern County's decisions to seize Plaintiff's children and present false evidence to the juvenile court in violation of Plaintiff's constitutional rights.

### a.  Dr. Stirling

According to Plaintiff's allegations, Dr. Stirling had contact with Kern County social workers on the following occasions: 1) some form of contact at some point after January 20, 2011; 2) some form of contact on February 18, 2011; 3) an email on February 18, 2011 following up on the contact; 4) a Team Decision Meeting telephone call on February 24, 2011; and 5) some form of contact at some point after Kern County removed R.D. from Plaintiff's care.

Plaintiff alleges that, during these contacts, Dr. Stirling made false statements about R.D.'s medical condition, Plaintiff's MSBP, and told social services to remove R.D. from and keep her out of

---

[4] Warrantless seizures of children from their parents are not per se unlawful.  "Government officials are required to obtain prior judicial authorization before intruding on a parent's custody of her child unless they possess information at the time of the seizure that establishes 'reasonable cause to believe that the child is in imminent danger of serious bodily injury and that the scope of the intrusion is reasonably necessary to avert that specific injury.'"  *Mabe v. San Bernardino Cnty., Dep't of Pub. Soc. Servs.*, 237 F.3d 1101, 1107 (9th Cir. 2001) (quoting *Wallis v. Spencer*, 202 F.3d 1126, 1138 (9th Cir. 2000)).  Because Plaintiff's claims against Defendants fail the first prong of § 1983 analysis, the Court does not reach the second question of whether the warrantless seizure of Plaintiff's children here violated her constitutional rights.

1  Plaintiff's care.  The Team Decision Meeting call occurred shortly before Kern County social workers
2  seized R.D. from Plaintiff's home.  During the Team Decision Meeting, the social worker asked each
3  of the doctors present whether they felt that R.D. was at risk and all three emphatically agreed that
4  R.D. should be removed from Plaintiff's care.

5       Even if Dr. Stirling made false statements to Kern County social workers regarding the need
6  to remove R.D. from Plaintiff's care, supplying information alone does not amount to conspiracy or
7  joint action under color of state law.  *Benavidez*, 722 F.2d at 618; *Butler*, 589 F.2d at 327.  Also, the
8  facts alleged do not show that Dr. Stirling had reached a meeting of minds with social workers to
9  violate Plaintiff's Fourteenth Amendment rights.  *Fonda*, 707 F.2d at 438.  Instead, despite Plaintiff's
10 conclusory statements, Plaintiff's allegation that social workers asked Dr. Stirling and other doctors
11 during the meeting whether R.D. was at risk suggests that no common consensus had yet been reached.
12 Further, the social workers asking Dr. Stirling and other doctors for their professional opinion on
13 whether Plaintiff's children should be removed during the February 24, 2011 telephone call does not
14 show Dr. Stirling's control over how the social workers made that decision.  *Franklin*, 312 F.3d at 446.
15 On the contrary, the alleged facts show that the social workers requested and obtained information
16 from the doctors for their own use in their investigation of Plaintiff.  *See*, *Fonda*, 707 F.2d at 438
17 (stating that the mere acquiescence of private actors to the investigation request of state actors is
18 insufficient to prove a conspiracy).

19      Plaintiff alleges no facts to show that Dr. Stirling exerted control over how the social
20 workers used the information they obtained to reach a decision to remove Plaintiff's children or to
21 falsify evidence at the juvenile dependency proceeding.  *Compare*, *Phelps Dodge Corp*., 865 F.2d at
22 1540 ("Evidence that [state actors] failed to exercise independent judgment will support an inference
23 of conspiracy with a private party.").  Therefore, Plaintiff does not adequately allege that Dr. Stirling
24 acted under color of state law in effecting the seizure and detention of Plaintiff's children or the
25 falsifying of evidence at the juvenile dependency hearing in violation of Plaintiff's constitutional
26 rights.

27      For these reasons, the Court DISMISSES without leave to amend Plaintiff's claims against
28 Dr. Stirling.

b.     **Dr. Harris**

Plaintiff alleges that Dr. Harris had contact with Kern County on two occasions – as a recipient of Dr. Stirling's email that Dr. Stirling also sent to a Kern County social worker on February 18, 2011, and as a participant in the Team Decision Meeting call on February 24, 2011.

Plaintiff alleges no facts to show that Dr. Harris reached a meeting of the minds and engaged in joint action with Kern County, or that Dr. Harris held or exercised control over Kern County social workers' decisions to unlawfully seize Plaintiff's children or to falsify evidence at the juvenile dependency hearing. *Fonda*, 707 F.2d at 438, *Franklin*, 312 F.3d at 446.  At most, Plaintiff alleges that Dr. Harris supplied false information about R.D. and Plaintiff to the social workers.  Based on this, Plaintiff makes the conclusory allegation that Dr. Harris "conspired to, and did, cause the presentation of false and fabricated evidence before the juvenile court, thereby maliciously interfering with Plaintiff's familial association rights."  (Doc. 66, p. 6).  Again, supplying information alone does not amount to conspiracy or joint action under color of state law.  *Benavidez*, 722 F.2d at 618; *Butler*, 589 F.2d at 327.  Further, as discussed above, the allegations regarding the Team Decision Meeting show that no common consensus had yet been reached and that the social workers requested and obtained information from the doctors for their own use in their investigation of Plaintiff.

Plaintiff alleges no facts to show that Dr. Harris exerted control over how the social workers used the information they obtained to reach a decision to remove Plaintiff's children or to falsify evidence at the juvenile dependency proceeding.  Therefore, Plaintiff's allegations fall far short of supporting a reasonable inference that Dr. Harris "cloaked [himself] with the authority of the state in effecting" the seizure and detention of Plaintiff's children or the falsification of evidence at juvenile court. *Howerton v. Gabica*, 708 F.2d 380, 385 (9th Cir. 1983).

For these reasons, the Court DISMISSES with leave to amend Plaintiff's claims against Dr. Harris.

c.     **Stanford**

Plaintiff alleges that Stanford conspired and engaged in joint conduct with Kern County based on Stanford's SCAN Team's cooperation with child welfare services.  Specifically, Plaintiff

15

1  alleges that Stanford's withholding of R.D.'s medical records from Plaintiff until after Plaintiff agreed

2  to the plea deal demonstrates Stanford's participation in the conspiracy.

3        The well-pleaded facts that Stanford withheld R.D's medical records and that Stanford's

4  SCAN Team cooperates with CPS on child abuse cases fail to give rise to a reasonable inference that

5  Stanford conspired with state actors to violate Plaintiff's constitutional rights.  As the Supreme Court

6  stated in *Twombly*, "[a]lthough in form a few stray statements speak directly of agreement, on fair

7  reading these are merely legal conclusions resting on the prior allegations."  550 U.S. at 564.

8  Likewise, here, the complaint's allegations that, based on the above facts, Stanford "voluntarily

9  collaborated, acted in concert, and maliciously conspired" with Kern County CPS and social workers

10  to violate Plaintiff's rights are "merely legal conclusions resting on the prior allegations" that the Court

11  need not accept.  *Id*.  "The need at the pleading stage for allegations plausibly suggesting (not merely

12  consistent with) [conspiracy] reflects Rule 8(a)(2)'s threshold requirement that the 'plain statement'

13  possess enough heft to 'sho[w] that the pleader is entitled to relief.'"  *Id*. at 545.  Plaintiff's allegations

14  "stop[] short of the line between possibility and plausibility."

15        For these reasons, the Court DISMISSES with leave to amend Plaintiff's claims against

16  Stanford.

17                                    d.    **Cedars-Sinai**

18        The complaint contains no allegations of any contact or relationship between Cedars-Sinai

19  and Kern County.  Following Cedars-Sinai's motion to dismiss the claims against it, Plaintiff makes no

20  arguments as to its first cause of action under § 1983 against Cedar-Sinai in her opposition.

21        These actions may indicate that Plaintiff agrees to voluntarily dismiss her first cause of

22  action against Cedars-Sinai.  Regardless of whether Plaintiff chooses to dismiss it, this Court finds that

23  the complaint cannot sustain a reasonable inference that Cedars-Sinai engaged in joint action and

24  conspired with Kern County to violate Plaintiff's rights in violation of § 1983.

25        Therefore, this Court DISMISSES with leave to amend Plaintiff's first cause of action

26  against Cedars-Sinai.

27              **2.    *Monell* Claims against the County, Cedars-Sinai, and Stanford**

28        In her second cause of action, Plaintiff alleges that the County, Cedars-Sinai, and Stanford

collaborated with Kern County through policies and practices which were the moving force behind the violations of Plaintiff's constitutional rights.  The *Monell* Defendants argue that Plaintiff fails to state a claim under *Monell v. Department of Social Services*.  436 U.S. 658, 690-91 (1978).

### i.      The County

*Monell* provides that a municipality can be liable under § 1983 only where the municipality itself causes the constitutional violation through a "policy or custom, whether made by its lawmakers or those whose edicts or acts may fairly be said to represent official policy."  *Id*. at 694.  Therefore, municipal liability in a § 1983 case may be premised upon: (1) an official policy; (2) a "longstanding practice or custom which constitutes the standard operating procedure of the local government entity;" (3) the act of an "official whose acts fairly represent official policy such that the challenged action constituted official policy;" or (4) where "an official with final policy-making authority delegated that authority to, or ratified the decision of, a subordinate."  *Price v. Sery*, 513 F.3d 962, 966 (9th Cir. 2008).

Plaintiff alleges that the County violated § 1983 by establishing and/or following policies and practices of improperly detaining, removing, and examining children, fabricating evidence, falsely accusing parents of having undiagnosed mental disorders, and providing inadequate training and supervision of employees working in child abuse and dependency type proceedings.  (Doc. 57, ¶ 136).

Plaintiff again appears to allege three distinct *Monell* claims against the County: (1) policies of constitutional violations; (2) a pattern and practice of constitutional violations; and (3) a failure to properly train employees.  Plaintiff again fails to allege sufficient facts to sustain a claim of *Monell* liability under any of these theories.[5]

### a.      Policies of Unconstitutional Action

Plaintiff again fails to allege any facts as to the actual policies of the County of Santa Clara with regard to the type of events alleged.  Plaintiff repeats her bare assertions that the County had a plethora of various unconstitutional policies, but still offers no facts that give rise to the inference that such policies actually existed.  "In order to establish an official policy or custom sufficient for *Monell*

---

[5] Plaintiff makes virtually no changes in her *Monell* allegations between her former complaint and the operative complaint. The Court's previous analysis of Plaintiff's *Monell* claim against the County likewise applies here.

1  liability, a plaintiff must show a constitutional right violation resulting from an employee acting

2  pursuant to an expressly adopted official policy." *Delia v. City of Rialto*, 621 F.3d 1069, 1081 (9th

3  Cir. 2010).  Plaintiff's pleading fails to provide any allegations as to the substance of the County's

4  expressly adopted policies.

5      Plaintiff therefore fails to state a valid claim as to the express policies of the County which

6  could give rise to *Monell* liability.

7                    **b.        Pattern and Practice of Unconstitutional Action**

8      Plaintiff also again alleges that the County followed unconstitutional practices.  To prevail

9  on this theory, Plaintiff must show "the existence of a widespread practice that ... is so permanent and

10  well settled as to constitute a 'custom or usage' with the force of law."  *Gillette v. Delmore*, 979 F.2d

11  1342, 1348 (9th Cir. 1992) (quoting *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988)).  Yet,

12  apart from the conclusory statements discussed above, the second amended complaint again contains

13  no factual allegations from which a "longstanding practice or custom which constitutes the standard

14  operating procedure of the local government entity" can be inferred.  *Price*, 513 F.3d at 966.  Rather,

15  the complaint focuses on a single incident and makes unsupported conclusory extrapolations that the

16  alleged conduct in the single incident represents a widespread, permanent, well-settled unconstitutional

17  practice.

18      Plaintiff again fails to assert a pattern and practice claim as to any of the alleged conduct.

19                    **c.        Failure to Train**

20      Plaintiff further alleges the County failed to provide adequate training and/or supervision

21  which resulted in violations of her constitutional rights.  While inadequacy of training may constitute a

22  "policy" giving rise to *Monell* liability, "adequately trained [employees] occasionally make mistakes;

23  the fact that they do says little about the training program or the legal basis for holding the

24  [municipality] liable."  *City of Canton v. Harris*, 489 U.S. 378, 379 (1989).  Therefore, a claim of

25  inadequate training is only cognizable under § 1983 "where [the County]'s failure to train reflects

26  deliberate indifference to the constitutional rights of its inhabitants."  *Id*. at 392.  In order to show that

27  a failure to train amounts to deliberate indifference, it is "ordinarily necessary" to demonstrate "a

28  pattern of similar constitutional violations by untrained employees."  *Connick v. Thompson*, 131 S. Ct.

1    1350, 1360 (2011).

2         As Plaintiff does not allege facts to show a pattern of violations, the Court analyzes this

3    claim under the "single-incident" theory of liability.  *Connick*, 131 S. Ct. at 1361 (stating that a

4    particular showing of "obviousness … can substitute for the pattern of violations ordinarily necessary

5    to establish municipal liability.").  Essentially, a single-incident theory can only arise in circumstances

6    with "the complete absence of legal training that the Court imagined in *Canton*."  *Id*. at 1363.

7         Here, Plaintiff claims her rights were violated by a lone County employee in a single

8    incident, but fails to allege how this shows that employees of the County had a complete absence of

9    training on the issues alleged.  Plaintiff again simply makes the conclusory allegation that the County

10   failed to train its employees.  Plaintiff therefore fails to state a "failure to train" claim against the

11   County.

12        Because Plaintiff again fails to state a claim under *Monell* against the County, Plaintiff's

13   second cause of action against the County is DISMISSED without leave to amend.

14              **ii.        Private Entities: Cedars-Sinai and Stanford**

15        The Ninth Circuit has held that *Monell* applies to suits against private entities under § 1983.

16   *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1139 (9th Cir. 2012).  To make out a claim against Cedars-

17   Sinai and Stanford under *Monell*, Plaintiff must show that 1) Cedars-Sinai and Stanford each acted

18   under color of state law, and 2) if a constitutional violation occurred, the violation was caused by an

19   official policy or custom of Cedars-Sinai and of Stanford.  *Id*.

20        As discussed above, Plaintiff fails to allege facts to show that either Cedars-Sinai or Stanford

21   acted under color of state law.  The complaint cannot sustain any reasonable inference that either

22   Defendant engaged in joint conduct or conspired with Kern County to violate Plaintiff's rights.

23   Therefore, Plaintiff fails to meet the first prong of the two-pronged analysis the Ninth Circuit outlined

24   in *Tsao*.  698 F.3d at 1139

25        For these reasons, Plaintiff's second cause of action under *Monell* against Cedars-Sinai and

26   Stanford is DISMISSED with leave to amend.

27

28                                          19

# CONCLUSION AND ORDER

For the reasons discussed above, the Court:

1.  DISMISSES without leave to amend Plaintiff Christine Deeths' first cause of action for violations of 42 U.S.C. § 1983 against Defendant John Stirling, Jr., and second cause of action for violations of 42 U.S.C. § 1983 against Defendant the County of Santa Clara;

2.  DISMISSES John Stirling, Jr. and the County of Santa Clara as Defendants in this action;

3.  ORDERS the Clerk of Court to enter judgment in favor of Defendants John Stirling, Jr. and the County of Santa Clara and against Plaintiff Christine Deeths in that there is no just reason to delay to enter such judgment given that Plaintiff Christine Deeth's claims against Defendants John Stirling, Jr. and County of Santa Clara and their alleged liability are clear and distinct from claims against and liability of other defendants.  *See* F.R.Civ.P. 54(b);

4.  DISMISSES with leave to amend Plaintiff Christine Deeths' first cause of action for violations of 42 U.S.C. § 1983 against Defendants Christopher Harris and Cedars-Sinai Medical Center, and second cause of action for violations of 42 U.S.C. § 1983 against Defendant Cedars-Sinai Medical Center;

5.  DISMISSES with leave to amend Plaintiff Christine Deeths' first cause of action for violations of 42 U.S.C. § 1983 against Defendant Lucile Packard Children's Hospital at Stanford, and second cause of action for violations of 42 U.S.C. § 1983 against Defendant Lucile Packard Children's Hospital at Stanford;

6.  GRANTS Plaintiff ***one opportunity*** to file and serve a third amended complaint in an attempt to cure the deficiencies described herein as to the remaining Defendants; and

7.  ADMONISHES Plaintiff to respect the limited resources and extraordinary caseload of this Court by limiting any further amended complaint in this action to no more than 30 pages of well-pleaded allegations.

20

Any such further amended complaint shall be filed and served within 20 days of electronic service of this order.  Defendants no later than 20 days after service of the second amended complaint shall file a response thereto.

IT IS SO ORDERED.

    Dated:   **November 26, 2013**          **/s/ Lawrence J. O'Neill**
                                                UNITED STATES DISTRICT JUDGE